CASE 29—PETITION ORDINARY—SEPTEMBER 26.

# Matheny vs. Wolffs.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. If the owner of real estate suffers a nuisance to be created or continued by another on or adjacent to his premises, in the prosecution of a business for his benefit, when he has the power to prevent or abate the nuisance, he is liable for an injury resulting therefrom to third persons.

2. An excavation, six or eight feet deep, running up to the edge of a pavement in a populous city, is a nuisance, if left at night without sufficient lights, safeguards, or barricades, to warn off passers-by.

3. Where the owner of real estate in a city employs undertakers to excavate a cellar and erect a building, and it is done in such a manner as to result necessarily in a nuisance, unless prevented by the proper precautionary measures, the owner is bound to the exercise of such measures, else he must answer in damages for injuries resulting to others from the neglect to do so.

4. In such a case, it does not matter what may have been his contract with the undertaker, his responsibility results from others doing, at his instance, that which must needs result in a nuisance, unless prevented by the appropriate precautions.

5. The degree of prudence required of a stranger, knowing nothing of an excavation, when passing along a street in a populous city after nightfall, without anything to admonish him of danger, must be left to the jury.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The appellees had contracted with Helh & Co. to erect for them a building on a lot at the corner of Third and Market streets, in the city of Louisville, which was to have a cellar eight feet deep. Helh & Co., in pursuance of their undertaking, had the cellar dug up to the edges of the pavement, the walls of the excavation being perpendicular; ordinary cedar posts were laid along the outer margin of the pavement to prevent the dirt falling back as it was thrown on to the pavement from the excavation, and these common posts are said to have been thus left the night of the accident; no other guards, safeguards, or barricades, or lights were left to warn passers-by that it was dangerous to pass that way.

A street lamp was at the corner and lighted the night of the accident. Matheny resided in the interior, and being called to Louisville on business, walked out after dusk in company

with a friend who resided in the city, when, passing along that part of one of the streets on the margin of this excavation, the pavement gave way, and he was precipitated into the excavation, by which his thigh was fractured, causing him much suffering, detention from business several weeks, and he was permanently disabled.

He brought this suit to recover of the proprietors, appellees, damages for the injury, alleging carelessness in leaving the excavation in the manner described.

It is urged that if appellees had let the building to undertakers, and had retained no control or supervision over it as it progressed, the undertakers, and not the proprietors, are responsible for all the carelessness and injuries resulting by themselves, servants, or agents.

To what extent the owners or lessees of real estate or personal property are answerable for injuries resulting to third parties in executing that which they have employed others to do, has been much discussed in England and the American States since the case of *Bush vs. Steinman* (1 *Bos. & Pul.*, 404).

The liability of the proprietors has been universally recognized where the relation of master and servant or principal and agent existed; but where an independent contractor intervened, there has been a contrariety of opinion.

"If the owner of real estate suffers a nuisance to be *created* or continued by another on or adjacent to his premises, in a prosecution of a business for his benefit, when he has the power to prevent or abate the nuisance, he is liable for an injury resulting therefrom to third persons." (*Clark vs. Fry,* 8 *Ohio State Rep.*, 359; *Ellis vs. Sheffield Gas Consumers' Co.,* 2 *Ellis & Black,* 75; *Eng. C. L., p.* 767; *Chicago City vs. Robbins,* 2 *Bl. U. S. S. C.,* 426.)

Is a perpendicular excavation up to the very edge of the pavement and sidewalk of a street, in a populous city, without placing sufficient safeguards or barricades to admonish passers-by after nightfall, a nuisance? Any act of an individual done to a highway, though performed on his own soil, if it detract from the safety of travelers, is a nuisance. (*Dygert*

vs. *Schenk*, 23 *Wend.*, 447; *Hart vs. Mayor of N. Y.*, 9 *Wend.*, 607; *Coke vs. Berge*, 9 *Geor.*, 425.)

Some of the witnesses state that the excavation at night had the appearance of an open area. The street lamp might afford light to discover the excavation, but could be no admonition to look out for danger. The dirt had been removed from the pavement, and no obstruction offered to travelers. Common, ordinary cedar posts, on the outer margin of the pavement were not likely to attract the attention of passers, nor to admonish them of danger, even if noticed, along a street where all were permitted to pass without hindrance.

The excavation up to the pavement rendered the street insecure and dangerous; consequently, a nuisance, unless properly protected by sufficient lights, guards, safeguards, or barricades to warn off passers. Proprietors have the legal right to excavate their lots for building purposes up to the very edge of the street, and perhaps to encroach on the street, and for this purpose have the right to use that part of the street for a reasonable time to the exclusion of the public; but this legal right must be exercised in a prudent, legal manner; and in populous cities the public interest and individual safety impose responsibilities from which such proprietor cannot escape; neither can they, by private contract, shift this responsibility upon undertakers or others. Hence the distinction, that, when an act must necessarily result in a nuisance, unless it be prevented by the proper precautionary measures, the proprietor is bound to the exercise of such measures, else he must answer in damages for injuries resulting to others from the neglect thereof. No matter what may have been his contract with the undertakers, in such case his responsibility does not depend on the relation of master and servant nor principal and agent, but results from others doing, at his instance, that which must needs result in a nuisance, unless prevented by the appropriate precautions.

There is a broad and intelligible distinction between this class of cases and the class for removing lumber, &c. The removal of the materials of an old building, nor the bringing to the situation of a new one, need be a nuisance, and can

only result in such by the careless manner of performance; nor need the removal of the dirt from an excavation result in a nuisance, nor will it, indeed, so result, but from the careless manner of execution; but an excavation up to the pavements of the streets in a populous city must become a nuisance, no matter how prudently the dirt may be removed therefrom, unless this be prevented by further precautionary acts; and unless the proprietor prevents this nuisance, it results from his own direct action; therefore, the law will permit him neither to exonerate himself from nor to shift his responsibility on to another.

In this case, however, the contract is wholly silent as to the duties and responsibilities of the undertakers to the public or private parties who may sustain injuries from any carelessness in the progress of the building; also, as to which of the contracting parties are to have the control, supervision, and possession during the erection; and, in the absence of any such provision, it would be going an unjustifiable length to exonerate the proprietors from their legal responsibilities, though the undertakers may also be liable. Indeed, we regard the security of the public and travelers as too important to be easily frittered away.

The deprivation of the use of any part of a street, even for a short time, in a populous city, may be a serious inconvenience to the public; yet they must submit to this inconvenience for the benefit of proprietors who desire to build; but, in the exercise of this exclusive right, they must be responsible that no nuisance be created; and if by themselves, their contractors, agents, or servants, they cause a nuisance, they must be held responsible for the resulting injuries.

The law, in its tender regard for the rights and enjoyment of private property and all its incidental benefits, confers upon the owner the right to do many things which must in themselves become a nuisance, unless prevented by further necessary and prudential acts; and, in the exercise of these extraordinary rights, they must be held responsible for the non-performance of their correlative duties.

What degree of prudence by a stranger, knowing nothing of an excavation, passing along a street after nightfall, without anything to admonish him of danger, through a populous city, where the people hurry along, and where it may reasonably be presumed the sidewalks are safe, as the law requires they should be, is hard to define, and should, perhaps, be left to the jury to determine from all the facts.

The first instruction asked by appellant, but refused by the court, should have been given. The instructions given are at variance with this opinion.

Wherefore, the judgment is reversed, a *venire de novo* is awarded, with directions for further proceedings in accordance herewith.