## Jefferson Dry Goods Co. v. Dale.

(Decided Nov. 23, 1934.)

(Rehearing Denied Dec. 14, 1934.)

502

CHAS. W. MORRIS and OSCAR LEIBSON for appellant.
DUDLEY L. CLARKE and RAYMOND C. ARNY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At about 7:30 a. m., on March 20, 1933, the appellee and plaintiff below, H. R. Dale, while half running in trying to get to and board a street car on Fourth street in the city of Louisville, fell on the north sidewalk of Jefferson street not far from where it intersects Fourth street, from which he sustaned injuries, to recover damages for which he filed this action against the abutting lessee, the appellant and defendant below, Jefferson Dry Goods Company. In his petition he averred that defendant maintained at the place where he fell, for its use and benefit, an opening into a cellar under the building occupied by it, and which was used in connection with the operation of its business; that the opening was covered with two doors coming flush with the pavement of the street when they were closed, and each of them when first installed was provided with a handle loosely working in sockets, and which would fall into provided cavities so as to be upon a level with or below the surface of the walk when not being used for lifting the doors, but that some six weeks before the accident one of the handles became broken, and defendant improvised a wire one as a substitute therefor, and that it had negligently failed to maintain the latter in a reasonably safe condition for pedestrian travelers, and that at the time the wire handle was projecting above the street into which he hung his right foot, causing him to fall and sustain the injuries complained of.

The answer denied the material averments of the petition, except that it admitted the improvised handle,

but insisted that it was as safe because of the manner of its adjustment, as was the original one constructed by the manufacturers of the door. The answer also contained a plea of contributory negligence, which was denied, and upon trial there was the requisite majority verdict in favor of plaintiff for the sum of $1,500, upon which the court rendered judgment against defendant, and its motion for a new trial having been overruled, it prosecutes this appeal, complaining of a number of errors, the material ones of which will be disposed of as the opinion proceeds.

It is first insisted that defendant was entitled to a peremptory instruction in its favor, but which we conclude the court properly overruled. That contention is based upon what counsel urges as the correct principle of law governing the rights of defendant in the premises, and which is that, before liability would attach to it, under the circumstances, it should have had notice of the complained of defect, or that the latter should have existed for such a length of time as that ordinary diligence on the part of defendant would have discovered it. In other words, it is insisted that defendant is not amenable unless it had actual or constructive knowledge of the defect and then failed to correct it within a reasonable time thereafter; the latter knowledge being that which would be gained by the exercise of ordinary care to discover the fact. The contention is no more nor less than the insistence that the same principle should govern this case as governs the liability of a municipality in maintaining its public ways reasonably safe for travel by those entitled to use them for that purpose. But, if that same measure of duty should be accepted by us as the governing one in this case, it would not then necessarily follow, under the facts proved and admitted, that defendant was entitled to the instruction contended for, as we will now proceed to point out.

In considering this case, we have read many of our opinions and those of other courts, as well as the statements of text-writers treating the subject, and from them we deduce the conclusions stated below as embodying the settled rules governing the duty of those similarly situated to that of defendant in this case, and which are approved and applied by a great majority of courts. They are: (a) When the abutting owner or

504

his occupying lessee maintains on the sidewalk adjacent to the occupied building a contrivance for his use and benefit, and for which he has obtained a license from the city, either express or implied, and it is constructed in a reasonably safe manner and after a reasonably safe plan so as not to be an obstruction on the sidewalk when the contrivance is not in use (during which latter time it should be guarded and protected), he is charged with the duty to exercise ordinary care to maintain it in such reasonably safe condition, and which requires that he should have notice of the defect, either actual or constructive, and a reasonable time thereafter in which to repair it; but (b) when the dangerous contrivance after construction, or placement, is itself an obstruction or inherently dangerous to those having the right to use the way, it instantly becomes a public nuisance, and the one who created it is liable at all events to one who is injured and damaged by reason thereof when himself in the exercise of ordinary care. In that case the tort-feasor is entitled to no notice of the condition which his act has produced on the public way, because, having been constructed by him, or at his instance, in a manner to be inherently dangerous, he possessed knowledge of its character from the beginning. Under rule (a), if the injury here complained of had been produced because of some condition of nonrepair or some displacement of parts of the contrivance, defendant would be entitled to notice thereof either actual or constructive, as we have indicated, before liability would attach to it.

Midway between those rules, and composed of some of the elements of both, a third one is evolved, and which is (c) that, although the maintained contrivance is so constructed as to be embraced by rule (a), yet if it, because of wear or other causes, becomes defective, its maintainer is required to repair it in a manner and fashion so as to preserve its original safety, and, if he should fail in that duty and substitute a dangerous device plan or method for the defective part or parts, he thereby becomes burdened with a more vigilant inspection in fulfilling his duty of exercising ordinary care, since the vigilance imposed by that phrase (ordinary care) corresponds with the dangers to be guarded against, including the probabilities and possibilities of the case. If the substituted contrivance is itself inherently dangerous, the duties imposed under rule (b), supra, become immediately effective. However, if the

substituted part is not, as constructed, inherently dangerous, but is only more liable to become so than was true of the original part so substituted, then the maintainer is called upon to exercise increased vigilance and inspection corresponding with such increased danger.

Authorities substantiating such rules are: Annotations in 62 A. L. R. beginning on page 1067, and following the case of Callaway v. Newman Mercantile Co. reported on page 1056 of that volume, and also in 321 Mo. 766, 12 S. W. (2d) 491, being one from the Missouri Supreme Court; 13 R. C. L. pp. 322, 403, 438, and 439; Elliott on Roads and Streets, vol. 2, secs. 899 and 903; Bosler Hotel Co. v. Speed, 167 Ky. 800, 181 S. W. 645; J. E. M. Milling Co. v. Gaines, 231 Ky. 779, 22 S. W. (2d) 274; Merchants' Ice & Coal Storage Co. v. Bargholt, 129 Ky. 60, 110 S. W. 364, 16 Ann. Cas. 965; Hippodrome Amusement Co. v. Carius, 175 Ky. 783, 195 S. W. 113, L. R. A. 1918E, 377, and other cases mentioned in those opinions. None of the indicated rules apply to a case where the imposed duty is contractual, since it is then measured by the terms of the contract. Clearly the evidence, as well as the admitted facts, bring this case within rule (c), supra, since the claimed dangerous condition that caused plaintiff to fall resulted from an act of defendant in attempting to repair an originally safe contrivance with a temporarily improvised one not possessing such qualities of safety, since it is a well-known principle of science that a wire, about the size of an old-fashioned slate pencil with which the improvised handle was made, because of its flexible qualities, is not liable to remain in a permanently safe condition. Defendant therefore was charged with the duty therein required to see that it was safely maintained, and is and was liable for damages proximately resulting from its failure to do so, unless it could allege and prove that the unsafe condition was brought about by an act of a stranger, and so recently that defendant could not discover it within time to repair it before the accident. The servant of defendant whose duty it was to manipulate and supervise the condition of the cellar doors, including their handles, and who was the one who installed the wire one, testified that on the evening before plaintiff's accident he felt sure that he had safely adjusted the wire handle so as not to interfere with pedestrian travel on the walk; but, when pressed, he

only testified, in substance, that it was his usual custom to make such observances, and for which reason he was quite confident he had done so in this case, and which condition of his testimony shrouded his evidence on that point in considerable doubt.

As opposed to it, we have the testimony of plaintiff and his brother who was with him at the time that the improvised wire handle was projecting above the sur-- face of the street some 2½ or 3 inches, and that plaintiff caught his right foot thereunder and was thrown to the walk. The most, therefore, that defendant was entitled to under that proof was a submission to the jury of that relevant and material issue, and which was done under an appropriate instruction.

It is next complained that the verdict is excessive, and which we think is meritorious. Plaintiff, as he stated, was caused to fall squarely on his seat. He sustained some flesh bruises and shocks to his system, but was able to walk to the home of his brother some few squares away, where he called Dr. R. C. Pearlman, who administered some treatments and put some plastering on the bruises; but the fact cannot be overlooked that he appeared to be much interested in plaintiff consulting an attorney, since he approved the calling of one forthwith, and which was done on that day shortly after his departure, when immediate arrangements were made for the bringing of this law suit. Some expert physicians took X-ray pictures of the lower extremities of plaintiff's body with the view of discovering whether or not there were fractured or misplaced bones or parts of the vertebræ. After they were developed, only one of the other five physicians who testified in the case could discover any indicated injury that might have been sustained by plaintiff because of his fall, and it was only a slight dislocation of one of the lower vertebræ, but which he intimated might have been produced by something occurring prior thereto. The other four professional witnesses could detect nothing from the pictures that could be attributed to plaintiff's accident. However, Dr. Pearlman professed to gather from them some slight indications of more or less damage in the particulars mentioned, and which were calculated to produce permanent injures. It was no doubt upon his testimony, who, as we have seen, was consulted about and approved the starting of this litigation, that

the verdict of the jury was based, since its size can be accounted for upon no other theory.

In arriving at that conclusion, we have not overlooked another fact appearing in the record, which is and was that some month or more after the accident happened plaintiff engaged in a fight with a policeman and in which he received injuries about the head, which returned him to the hospital for the second time, although he was then claiming to be in an almost helpless condition as a result of his dislocated vertebræ. The related facts leading to our conclusion that this ground (excessive verdict) is meritorious and should be sustained, are not recommendatory of the bona fides of plaintiff's entire claim, and give to it a coloring of being to some extent at least a manufactured one. But, whether so or not, the case as presented shows clearly that the verdict to the excessive extent of the damages rendered, being based upon the scintilla furnished by the testimony of Dr. Pearlman, is so flagrantly against the evidence as to indicate that it was the result of passion and prejudice, and for which reason the motion for a new trial should have been granted.

Wherefore, for the reasons stated, the judgment is reversed, with directions to sustain the motion for a new trial and for proceedings consistent with this opinion.