## Brown Hotel Co., Inc. v. Sizemore.

November 29, 1946.

432

Robert F. Vaughan for appellant.
Harry L. Hargadon for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER
—Affirming.

The sole question is whether or not a peremptory instruction should have been given for the defendant, Brown Hotel Company, in this action against it and the Pittsburg Fuel Company by T. M. Sizemore for injuries sustained when the cover of a coal chute on which he stepped tilted and caused his leg to plunge into the man-hole. The judgment was for $5,277 on a verdict speci-fically providing that each defendant should pay an equal part. The Fuel Company satisfied its half of the judgment, but the Hotel Company appeals, and contends it was entitled to a peremptory instruction.

The Hotel Company constructed and maintained three standard coal holes in a public alley in the rear of its building between Third and Fourth Streets in Louisville. It is a much traveled way for pedestrians as it affords a short-cut between two principal streets. The coal holes are covered with 24 inch iron lids fitted

into collars or flanges. When so placed the lid is secure and there can be no tilting or displacement by a person stepping on it. The Fuel Company's driver had dumped in a load of coal, and the jury found that he had failed to replace the lid properly, apparently having left some fine coal around the seat of the lid so that it was left in an unsafe condition. There is no claim of actual knowledge of the unsafe condition on the part of the Hotel Company, its liability being predicated upon the theory of constructive notice. The Hotel Company contends that it may not be so charged.

By comparative calculations from time more or less definitely established, there was an interval of from five to 15 minutes after the driver replaced the lid over the manhole before the plaintiff stepped on it. A part of the building sits back from the alley at this point to admit deliveries on a platform. The receiving clerk has his office there. The coal was receipted for by an assistant. The accident was seen by the receiving clerk as he was leaving the place in a truck. It appears that in order to avoid the truck, the plaintiff had stepped to the south side of the alley and on the manhole cover.

In Jefferson Dry Goods Co. v. Dale, 257 Ky. 501, 78 S. W. 2d 305, the court gave full consideration to the duties and responsibilities of an abutting owner or lessee who, for his own use and benefit, maintains a contrivance or instrumentality in a public way, and made three classifications. One class is that where the device is not inherently an obstruction and was constructed in a reasonably safe manner and according to a reasonably safe plan, the owner or possessor is charged with the duty of exercising ordinary care to maintain it in a reasonably safe condition; that in order to be answerable for an injury proximately resulting from the device having become defective through no fault of the owner or possessor, he must have had either actual or constructive notice thereof and a reasonable time thereafter in which to repair it. This case was submitted to the jury on that theory of liability, the instruction embracing the element of time for discovery. Constructive notice is knowledge imputed by law from the circumstances and is predicated upon the theory that negligent ignorance is no less a breach of duty than wilful neglect, and one must be presumed to know what he should have discov-

ered by the exercise of ordinary diligence. In Kniffley v. Reid, 287 Ky. 212, 152 S. W. 2d 615, the evidence as to the liability of a property owner for injuries to a pedestrian who fell in a coal hole in a sidewalk when the cap tilted was not sufficient to take the case to the jury as against the city under the theory of constructive knowledge, as there was nothing about the appearance of the covering to indicate an unsafe condition, but the evidence was sufficient to submit it as against the property owner because the condition had existed a long time and there was proof of her actual knowledge of it. We pointed out that the rule of res ipsa loquitur applies in such a case, so that when the plaintiff has established an injury and its cause, the burden is cast on the defendant to go forward with some affirmative defense, e. g., absence of knowledge and opportunity to repair.

We put aside the law and cases declaring it where the structure or instrumentality had been disturbed or made unsafe by a wrongdoer without knowledge of the owner; also those cases which are closer to the instant one, where it was made easy for a miscreant to tamper with the device, and as in Jefferson Dry Goods Company v. Dale, supra, where the owner improvised a handle in a cellar door which was easily displaced and thereby made dangerous. The responsibility in those classes of cases is not quite so great nor the degree of alertness so high as in one of this kind. There is a difference in responsibility. In a case like the present, where the coal hole or similar structure is located in a public way for the special and private benefit and under the control of the owner or possessor of abutting property, there can be no doubt that in its maintenance he assumes an affirmative duty to exercise reasonable care to know that it is left in a reasonably safe condition when it has been used. Whatever public safety reasonably requires is the measure of the diligence of precaution to be observed by him, for his use is subordinate to the public rights. He cannot avail himself of the privilege of using a public way for an appurtenance to his property without discharging that duty. He cannot cast the burden of its proper maintenance on another. The principle is to be found in Stephens Adm'r v. Deickman, 158 Ky. 337, 164 S. W. 931, 51 L. R. A., N. S., 309; City of Louisville v. Metropolitan Realty Co., 168 Ky. 204, 182 S. W. 172;

Schmidt v. City of Newport, 184 Ky. 342, 212 S. W. 113; City of Newport v. Schmidt, 191 Ky. 585, 231 S. W. 54. This is so even though the primary negligence is that of an independent contractor as in the case at bar.

Although it has always been considered settled law that an employer of another as an independent contractor is not liable for his collateral negligence, it is also quite well settled that where one causes something to be done, the doing of which casts on him a duty, he cannot escape from the responsibility attaching on him of seeing that duty performed by delegating it to the contractor, and cannot relieve himself from liability to any person injured by a failure to perform it. Weber v. Buffalo Railway Co., 20 App. Div. 292, 47 N. Y. S. 7. It is not easy to express this principle in terms which will apply to all cases nor to draw a clear distinction. Responsibility of an abutting property owner for an act of his contractor was recognized long ago in Matheny v. Wolffs, 63 Ky. 137, 2 Duv. 137, that: "If the owner of real estate suffers a nuisance to be created or continued by another on or adjacent to his premises, in a prosecution of a business for his benefit, when he has the power to prevent or abate the nuisance, he is liable for an injury resulting therefrom to third persons."

In that case in holding the property owner liable for injuries sustained by a pedestrian in falling into an excavation at the edge of a sidewalk, made by a contractor and left unguarded, after recognizing the right of the property holder to build to the edge of the street or to encroach upon it, the court said: "But this legal right must be exercised in a prudent, legal manner; and in populous cities the public interest and individual safety impose responsibilities from which such proprietor cannot escape; neither can they, by private contract, shift this responsibility upon undertakers or others. Hence the distinction, that, when an act must necessarily result in a nuisance, unless it be prevented by the proper precautionary measures, the proprietor is bound to the exercise of such measures, else he must answer in damages for injuries resulting to others from the neglect thereof. No matter what may have been his contract with the undertakers, in such case his responsibility does not depend on the relation of master and servant nor principal and

agent, but results from others doing, at his instance, that which must needs result in a nuisance, unless prevented by the appropriate precautions.''

To the same effect are Baumeister v. Markham, 101 Ky. 122, 123, 39 S. W. 844, 41 S. W. 816, 72 Am. St. Rep. 397; Young & Humphrey v. Trapp, 118 Ky. 813, 82 S. W. 429; City of Louisville v. Nicholls, 158 Ky. 516, 165 S. W. 660. The principle is also recognized and applied as between a city having the duty of maintaining its streets in a reasonably safe condition and a contractor who created the condition which caused the injury to a third person. Brentlinger v. Louisville R. Co., 156 Ky. 685, 161 S. W. 1107; McQuillen on Municipal Corporations, Sections 2834, 2839. And it is familiar law that a city may be liable for injury resulting from an unsafe condition in its streets and sidewalks caused by the act of persons other than the agents of the municipality.

The courts are quite uniform in holding that there is an affirmative duty of seeing that a coal hole or similar servitude is properly guarded or protected when being used, and, as well, that the covering has been safely replaced; that the owner or possessor cannot absolve himself from liability or avoid performance of the duty by leaving it to another, such as the deliveryman of coal. The owner or possessor cannot receive the benefits of having the coal company use the chute to supply him with coal and at the same time renounce all interest or concern as to the condition it is left in, which may be to the manifest jeopardy of persons using the public thoroughfare being caught in a trap of an open hole or insecure covering. Both the owner or possessor and the deliveryman or his master are amenable to the injured person, although, as we have said, the primary negligence is that of the deliveryman and his master. Ray v. Jones & Adams Co., 92 Minn. 101, 99 N. W. 782; Scott v. Curtis, 195 N. Y. 424, 88 N. E. 794, 40 L. R. A., N. S., 1147, 133 Am. St. Rep. 811; Hart v. McKenna, 106 App. Div. 219, 94 N. Y. S. 216; Trustee of Village of Canandaigua v. Foster, 156 N. Y. 354, 50 N. E. 971, 41 L. R. A. 554, 66 Am. St. Rep. 575; Weber v. Buffalo R. Co., 20 App. Div. 292, 47 N. Y. S. 7; Mullins v. Siegel-Cooper Co., 183 N. Y. 129, 75 N. E. 1112; Strohm v. Haverstick, 43 Pa. Super. 166. These and other apposite cases are annotated in 11 A. L. R. 571, 53 A. L. R. 932, 62 A. L. R. 1067, 70 A.

L. R. 1358. To them may be added: Lois v. Great A. & P. Tea Co., 2 Cir., 146 F. 2d 781; Vendig v. Union League of Philadelphia, 291 Pa. 536, 140 A. 503; Oneker v. Liggett Drug Co., 124 Conn. 83, 197 A. 887; Globe Indemnity Co. v. Schmitt, 142 Ohio St. 595, 53 N. E. 2d 790; Maryland Casualty Co. v. Frederick Co., 142 Ohio St. 605, 53 N. E. 2d 795. In Benjamin v. Metropolitan Street Ry. Co., 133 Mo. 274, 34 S. W. 590, 592, which is of particular pertinence, the facts are almost identical with those which we have before us. The plaintiff was injured when a covering of a coal hole turned and slipped out of place when she stepped on it. It appeared that the chute had been used by a coal company about 15 minutes before the injury and the cover put back in such way as to turn or tilt when stepped on. It was pointed out that the owner furnished the coal company with the means of unloading the coal into its bin and knew that it had been used by the deliveryman a few minutes before. Its use was, therefore, at the owner's express direction. Applying the principle that a city which authorizes excavations in its streets is not entitled to notice of the dangerous condition in which they have been left, in order to be made liable for injuries to third persons occasioned thereby, the court reasoned thus: "It seems to us the same principle applied to defendant, in respect to keeping its scuttle hole in a safe condition. It was under obligation to do so. It authorized the removal of the cover. Why should it have notice of the condition in which it was left? * * * But we are not required to go so far here. For the time being, the contractors had completed their work, and the question is whether notice of the dangerous condition in which the hole was left could fairly be inferred by the jury after the lapse of 15 minutes thereafter. The court held that the question of notice was for the jury, and of this ruling the defendant cannot reasonably complain."

For the purpose of testing this defendant's right to a peremptory instruction in the case at bar, we accept as the established fact that 15 minutes had elapsed between the time the driver of the coal truck replaced the lid and the moment of plaintiff's injury, as that is the most favorable to him. But length of time is only an element in the circumstances. After all is said, we get back to ordinary care and diligence. In determining

what that was, the overall picture must be viewed and all elements that compose it regarded. All must be considered in determining the force and latitude of the essentially relative terms "reasonable care" or "reasonable diligence." The conclusions of the courts which we have stated are simply that ordinary care under circumstances such as those before us demands more than mere passiveness on the part of the property owner, a course he might follow in reliance upon the faith that no one in the ordinary course of life will disturb the safe condition. This is so because responsibility is proportionate to the hazards reasonably to be apprehended. Such repose is not justified because, for the purpose of determining whether the "reasonable man" should recognize that his conduct involves the risk of causing an invasion of another person's interest, he is assumed to know the qualities and habits of human beings and the characteristics and capacities of things and forces in so far as they are matters of common knowledge. Restatement of the Law of Torts, Negligence, Vol. 2, Sec. 290 (a). In Comment h, under Clause (a) of this section, it is laid down as the law: "Knowledge of the qualities, capacities, and tendencies of human beings and animals and the operations of natural forces is of most obvious importance where the actor's conduct has created a situation which, without more, is not dangerous to anyone, but which may become dangerous to others if it is subsequently acted upon by a human being or animal or by a force of nature. It is in this situation that the question, whether the action is required to anticipate and provide against the wrongful conduct of a human being, or the unusual but not unprecedented operation of natural forces, is most often discussed."

The experiences of life suggest no assurance that a deliveryman will certainly restore the covering of a coal hole in a safe and secure way. We may go even further. The deliveryman is a licensee of the owner, for he has used his property by his direction or consent and the deliveryman and the coal hole continue to be subject to his control. Restatement, Sec. 318. It is laid down as the law in Section 414: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for bodily harm to others, for whose safety the employer owes a duty to

exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.''

Therefore, the authority of the deliveryman to open and use the coal hole imposes on the owner or possessor the affirmative duty of exercising some degree of anticipation and attentiveness at least. It does not permit absolute repose until something calls the dangerous condition to his notice or there is the lapse of such a period of time that he will be presumed to have notice. Nonaction is or may be negligence.

In this case we have a part of the defendant's property as a servitude on a much traveled public way which had just been used for its benefit. Its clerk had receipted for the coal perhaps 15 minutes before the accident. He testified that he had usually looked out from his office after a load of coal had been delivered to see that the cover had been put back, but that is all. In this instance he was passing by it just before or at the time of the accident. He stated that he had seen nothing wrong with the cover. But he did not look to see. Doubtless his eyes were on the pedestrian just as the plaintiff's eyes were on his truck, to avoid which he stepped to one side and on the loose lid. The displacement evidently was not obvious or apparent at a casual glance. But we do not think that fact excuses the defendant. The basis on which liability of the Hotel Company was submitted in the instruction was whether the Hotel Company should have discovered the loose lid within the interval of time. The correct basis should have been whether the Company exercised ordinary care and vigilance to discover the condition. The instruction was perhaps more favorable to the defendant than it was entitled to. It is not to be overlooked that the burden had shifted to the defendant to justify its non-action. The jury was authorized in law to find as a fact that the defendant was guilty of negligence.

Wherefore the judgment is affirmed.