**Roberta B. MACKEY et al., Appellants,**

**v.**

**George S. ALLEN et al., Appellees.**

Court of Appeals of Kentucky.

May 7, 1965.

Rehearing Denied Dec. 17, 1965.

Herman E. Frick, Louisville, for appellants.

William Mellor, Louis N. Garlove, Carl J. Bensinger, Henry D. Hopson, Hamilton, Hopson & Hamilton, Louisville, for appellees.

PALMORE, Judge.

Early in the afternoon of December 15, 1961, Mrs. Roberta B. Mackey was having her hair dressed at Ken's Beauty Salon on Central Avenue in Louisville. One of the young ladies employed in the shop became ill and Dr. Kenneth Hodge was summoned from the Central Medical Clinic, located diagonally across the street. At his request Mrs. Adams, proprietor of the beauty shop, got her automobile and transported the young lady over to the clinic. Mrs. Adams did not return at once to the beauty shop. Meanwhile, customers began to arrive pursuant to their appointments with her and the lady who had been taken ill, and the operator who had completed the job begun

on Mrs. Mackey's hair by Mrs. Adams asked Mrs. Mackey if she would be kind enough, on leaving, to go over to the clinic and find out from Mrs. Adams whether the customers should be asked to wait or to make new appointments. Mrs. Mackey obliged, and went over to the clinic for that purpose. She had never been there before. There were two identical doors side by side (five or six feet apart) under a canopy or marquee bearing the name "Central Medical Clinic." The left door actually was the only entrance to the clinic. The right door opened directly from a sidewalk outside of the building into an unlighted stairway leading to a storage area in the basement. Assuming that both doors entered the clinic Mrs. Mackey opened the one to the right and stepped inside, all in one continuous motion. She landed at the foot of the stairs and was injured.

The building in which the accident occurred was owned by George S. and Helen W. Allen and occupied by two tenants, Arthur J. Voss, d/b/a Voss Pharmacy, and Central Medical Clinic, a partnership consisting of Dr. Hodge and Dr. Stuart Cohen. The basement storage area into which Mrs. Mackey fell was used by both Voss and the clinic. Each had a key to the door in question, which ordinarily was kept locked. Within two hours or so before Mrs. Mackey's accident a quantity of merchandise ordered by Voss had been delivered by two employes of Our Own Deliveries, Inc. Voss unlocked the door to the basement and directed the delivery men to store the packages below. When the delivery men left, they pulled the door to but did not lock it. In Voss' own words, "I opened the door to the basement for a delivery from Gould's Wholesale Supply House. I went back in the drug store and got busy and forgot to check to see if the basement door had been locked after the delivery boy left. I didn't tell the delivery boy to lock the door after he completed his delivery. * * I left the store about one-thirty and returned to my home, and I got a call—I forget whether I called the store or whether they

called me and told me that someone had fallen down the basement stairway."

In this action Mrs. Mackey sued Voss, the Allens, the doctors, and the delivery company for her personal injuries and damages. Her husband joined a claim against the same defendants for loss of consortium. After the taking of depositions the trial court sustained motions for summary judgment by the Allens and the doctors. At the close of the evidence for the plaintiffs a verdict was directed in favor of the remaining defendants, Voss and the delivery company. The Mackeys appeal.

As pointed out in a very able summary delivered by the trial court in passing on the motions for directed verdict, the facts of the case are virtually undisputed. Further details will be provided as our discussion relates to each defendant or set of defendants.

1. *Central Medical Clinic.*

In his deposition Dr. Hodge admitted that another lady, a Mrs. Showalter, had mistakenly entered the same door and fallen down the same stairway about a month before Mrs. Mackey's accident. Following Mrs. Showalter's fall he and Dr. Cohen actually discussed the advisability of putting up some kind of sign to prevent further accidents of the same nature. This evidence, we believe, with an appropriate admonition limiting its purpose, would have been admissible against the doctors to show their knowledge of the dangerous condition, hence the foreseeability of the accident. 38 Am.Jur. 1012–1014 (Negligence § 314); Louisville & N. R. Co. v. Jackson's Adm'r, 250 Ky. 92, 61 S.W.2d 1104 (1933); O'Neil & Hearne v. Bray's Adm'x, 262 Ky. 377, 90 S.W.2d 353, 356 (1936). In the absence of evidence to the contrary, Dr. Hodge's deposition concerning the previous accident was sufficient to indicate its having occurred under substantially similar circumstances.

In the briefs much discussion has been devoted to the technical status of Mrs.

Mackey, whether she was an invitee, licensee, or trespasser. We are inclined to regard her as a business invitee of the clinic, because her visit to the premises was "for the convenience or arose out of the necessities" of another person who definitely was in the clinic for purposes of the possessor's business, that other person being Mrs. Adams. Cf. Restatement of Torts, § 332, Comment d. The principle that a business invitee's guest is also an invitee was recognized in City of Madisonville v. Poole, Ky., 249 S.W.2d 133 (1952), and the Restatement of Torts has been cited repeatedly by this court as a reliable source of authority on this general subject. Cf. Kentucky & West Virginia Power Co. v. Stacy, 291 Ky. 325, 164 S.W.2d 537, 170 A.L.R. 1 (1942).

■ Certainly Mrs. Mackey was not a trespasser, and it really makes no difference whether she was an invitee or a bare licensee, because the basic distinction between the duties of the possessor is that he owes an invitee the duty of *discovering* a dangerous condition, whereas he owes a licensee only the duty to warn him of a dangerous condition *already known* to the possessor. Kentucky & West Virginia Power Co. v. Stacy, supra. If the possessor is aware of a condition involving unreasonable risk to the licensee and by the exercise of ordinary care should foresee that the licensee will not discover it or realize the risk, he has at least a duty to warn him. Coleman v. Baker, Ky., 382 S.W.2d 843, 848 (1964). In this case it is beyond cavil that the doctors knew of the dangerous condition.

■ It is true that there was no intent on the part of the doctors to invite people into the basement. But the extension over their marquee and sign over both doors gave the appearance of inviting entry through either. That circumstance alone distinguishes the case from Farmer v. Modern Motors Co., 235 Ky. 483, 31 S.W.2d 716 (1930), and Illinois Cent. R. Co. v. Sanderson, 175 Ky. 11, 192 S.W. 869, L.R.A. 1917D (1917). In neither of those cases was there a sign on or over the door to suggest that it was an entrance to the visitor's intended destination. It is our opinion that an apparent invitation must be equated with an invitation in fact.

■ The negligence of Voss in causing the basement door to be left unlocked was not an independent act superseding the negligence of the clinic under the principles stated in Brown Hotel v. Levitt, 306 Ky. 804, 209 S.W.2d 70 (1948), and Bengold Properties Inc. v. Crook, Ky., 377 S.W.2d 56 (1964), unless it was an act the members of the clinic could not reasonably have been expected to foresee. This appears to be a deviation from the familiar rule that a person is not bound to anticipate the negligence of another, but it is well settled nevertheless. Hines v. Westerfield, Ky., 254 S.W.2d 728 (1953). We quote the Restatement of Torts, § 447, as follows:

> "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about if
>
> "(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or
>
> "(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or
>
> "(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent."

The doctors knew that Mrs. Showalter's accident also had happened as the result of a failure by Voss to lock the door to the basement. That they did in fact realize he might do the same thing again is estab-

lished conclusively by the express admissions of Dr. Hodge in relating the ensuing discussion with Dr. Cohen.

■ We are not persuaded that Mrs. Mackey was contributorily negligent as a matter of law. She walked out of the bright sunlight of mid-day into the comparative darkness of an unlighted staircase reasonably expecting a floor to be there. There was neither floor nor platform. She had no opportunity to realize she might have entered the wrong door or to appreciate the existence of danger, as did the injured plaintiff in Illinois Cent. R. Co. v. Sanderson, 175 Ky. 11, 192 S.W. 869 (1917). Whether she exercised ordinary care for her own safety in choosing the door to the right, and in the manner in which she entered it, is properly a question for the jury. Cf. Phelps Roofing Company v. Johnson, Ky., 368 S.W.2d 320, 324 (1963).

■ It is our conclusion on this phase of the case that the clinic was negligent as a matter of law, and that if the evidence produced at a trial be substantially the same the jury should be required to determine only the questions of contributory negligence and damages.

## 2. Voss.

■ We reach the same conclusion with respect to Voss. He and the clinic shared the use of the basement door. They had the only keys to it. He knew the clinic sign was over the door. He was as well able as were the members of the clinic to foresee the probable consequences. His knowledge that the sign gave the appearance of an invitation to enter his door puts him in the same position as if he had shared in the invitation. If he did not want people to act on the strength of that ostensible invitation he should have kept the door locked. By sharing in the occupancy and possession of the basement he shared in the responsibility of exercising ordinary care to see that the invitees or licensees of his co-possessor were not lured into a trap known to him but concealed to them.

As a matter of fact, Voss also knew of Mrs. Showalter's fall down this same stairway. The evidence was excluded by the trial court because Voss did not know that the circumstances were similar. We think this was a hypertechnical result. The doctors had advised him of Mrs. Showalter's accident. In the usual course of human events people do not fall down stairways on purpose. The very fact that a lady had fallen down the stairs was enough to put a reasonably prudent man on notice that it was not safe to leave the door unlocked.

## 3. The Allens (landlord).

The lease to Voss specifically covered two-thirds of the basement. The lease to the clinic made no reference to the basement. Nevertheless, the understanding among the parties was that it was in the exclusive possession of the two tenants. The Allens did not have a key to the door in question. Mr. Allen visited the premises once a month when he came around to collect the rents, and on these occasions he usually borrowed a key from one of the tenants and went down into the basement for the purpose of cleaning it up, though he had no duty to do so.

■ When a landlord retains control of a portion of the leased premises for the common use of two or more tenants he is responsible for the condition of the part so retained. 32 Am.Jur. 561–562 (Landlord and Tenant, § 688). In Primus v. Bellevue Apartments, 241 Iowa 1055, 44 N.W.2d 347, 25 A.L.R. 565 (1950), it was said that in the absence of proof to the contrary a landlord is presumed to have retained control over premises used in common by his different tenants. See also Starks Building Co. v. Eltinge, Ky., 269 S.W.2d 240, 242 (1954). Be that as it may, we think such a presumption would be conclusively rebutted by the circumstances of this case. At the time Mrs. Mackey was injured the exclusive control

of the basement and its entrance lay jointly in Voss and the clinic.

The Allens were entitled to their summary judgment.

### 4. *Our Own Deliveries, Inc.*

The legal position of the delivery company is not free of doubt. Its employes did participate in the act, or omission, of the door's being left unlocked. See Brown Hotel Company, Inc. v. Sizemore, 303 Ky. 431, 197 S.W.2d 911 (1946), recognizing the liability of a deliveryman for insecurely replacing the cover of a manhole in a public alley. In this instance the door was equipped with an inside push-button type of lock, though the delivery men did not actually notice that fact. They could have asked Voss whether they should lock the door when they finished their job. They could also have notified him when they left. On the other hand, they were on the premises for only 10 to 15 minutes at the most, and neither of them had ever been in the basement before. An ordinary workman employed on a delivery truck can hardly be expected to exercise a great deal of independent judgment beyond what he is told to do. We think it would be unreasonable to find that these two men should have appreciated the risk to third persons that would result from their failure to see that the door was locked, much less to recognize an affirmative responsibility to prevent it. The Brown Hotel Company-Sizemore case is distinguishable on the ground that the delivery man in that instance knew very well that he was to replace the manhole cover securely and is bound to have been fully aware of the probable consequences of a failure to do so.

We think the action of the trial court in directing a verdict for the delivery company was correct.

The cause is affirmed as to the appellees George S. Allen, Helen W. Allen, and Our Own Deliveries, Inc. As to the appellees Hodge, Cohen, and Voss it is reversed for further proceedings consistent with this opinion.