RENDERED: MARCH 11, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1483-MR

GLOBAL SPECTRUM LP,
D/B/A SPECTRA VENUE
MANAGEMENT                                                                                   APPELLANT


APPEAL FROM DAVIESS CIRCUIT COURT
v.              HONORABLE JAY A. WETHINGTON, JUDGE
ACTION NO. 18-CI-01272


CITY OF OWENSBORO;
OFFICER AARON CREAGER;
BEAVER DAM EMERGENCY, INC.;
JAMISON HUGHES; JEREMY NANCE;
OWENSBORO POLICE DEPARTMENT;
OWENSBORO SPORTSCENTER; AND
UNKNOWN SECURITY GUARDS
#1, #2, #3, #4, AND #5                                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, COMBS, AND MAZE, JUDGES.

MAZE, JUDGE: Global Spectrum LP ("Global") appeals from a judgment of the Daviess Circuit Court awarding the City of Owensboro and Officer Aaron Creager (collectively, "the City"), attorney fees and costs expended in defending against a third-party claim and in seeking enforcement of the indemnification clause in the contract between Global and the City. We agree with the trial court that the contract clearly obligated Global to defend and indemnify the City from all claims arising from Global's performance of the contract. Since the third-party claim against the City was based primarily on Global's alleged negligence, the contractual provision applied to the facts of this case. We further determine that the provision did not violate any clearly-established public policy. Next, we agree with the trial court that Global was obligated to indemnify the City for its attorney fees in defending the claim regardless of any determination of Global's underlying liability. Finally, we conclude that Global's failure to defend amounted to a breach of its obligations under the contract, thus warranting an additional award of attorney fees incurred by the City to enforce the contract. Hence, we affirm.

This action arises out of an incident on September 28, 2018, during a concert at the Owensboro Sportscenter ("Sportscenter"), which is owned by the City. The City entered into a "Management Agreement" which provided that Global shall have exclusive control and responsibility to manage the operations of the Sportscenter. Pursuant to its obligations under the Management Agreement,

Global hired Beaver Dam Emergency, Inc. ("Beaver Dam") to provide security for events at the Sportscenter, including the concert involved in this case.

Jamison Hughes attended the concert on September 28, 2018. At some point, the security guards, employed by Beaver Dam, removed Hughes for being disruptive. While the facts of that incident are disputed, the security guards called the police. Officer Aaron Creager of the City Police Department responded to the call. When he arrived, Officer Creager observed several security guards holding Hughes on the ground. Officer Creager placed handcuffs on Hughes and checked him for weapons. Officer Creager then spoke with the security guards, who relayed their account of Hughes' disruptive behavior. Officer Creager observed that Hughes was intoxicated. Hughes also admitted to Officer Creager that he was intoxicated.

Officer Creager then removed the handcuffs from Hughes and issued a citation for alcohol intoxication and second-degree disorderly conduct. Hughes was examined for injuries by EMTs, but he declined to be transported to the hospital. At Hughes' arraignment, the Commonwealth agreed to dismissal of the charges without any stipulation of probable cause.

Thereafter, Hughes filed an action against the City, Officer Creager, Global, Beaver Dam, Jeremy Nance (an employee of Beaver Dam), and five unknown security guards. The City filed a motion for summary judgment on

liability. The trial court granted the motion, finding that Officer Creager had probable cause to detain Hughes based upon his own investigation and the statements of the witnesses.

Prior to the entry of summary judgment on this issue, the City filed a cross-claim against Global, noting that the Management Agreement included a provision requiring Global to defend and indemnify the City from any claims arising out of Global's management of the Sportscenter. Following the dismissal of Hughes' claims against the City, the City filed a motion for summary judgment against Global. In the motion, the City sought to recover attorney fees and costs expended in defending Hughes' claim. Global filed a cross-motion for summary judgment to dismiss the cross-claim.

After considering the motions, the trial court granted summary judgment for the City. The court noted that, under the Management Agreement, Global is responsible for the acts and omissions of its agents, employees, contractors, and subcontractors. The court found that Hughes' claims "arise out of" Global's duties under the Management Agreement. The court further found that those claims were primarily based upon the actions of the security guards in detaining Hughes and providing information to Officer Creager. The court also determined that the indemnification agreement did not violate public policy

-4-

because it was narrowly focused on Global's own alleged negligence and not the alleged negligence of the City or Officer Creager.

Next, the trial court found that summary judgment for the City was appropriate because the Management Agreement required Global to indemnify the City for its costs in defending the action, and not merely for its liability. And finally, the trial court determined that the City was entitled to recover its attorney fees and costs on its cross-claim because Global's failure to defend amounted to a breach of its duties under the Management Agreement. After the City filed its affidavit of attorney fees, the trial court entered a judgment against Global in the amount of $53,847.88. This appeal followed.[1]

Global argues that the City was not entitled to summary judgment on its cross-claim. Rather, Global contends that it was entitled to summary judgment on the City's claim for attorney fees and costs. "[T]he proper function of summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment is appropriate "if the pleadings,

---

[1] Hughes' claims against Global and its agents remained pending following entry of the City's motion for summary judgment on its cross-claim against Global. However, trial court designated its October 21, 2020, order and judgment awarding attorney fees to the City as final and appealable pursuant to CR 54.02(1). Therefore, this appeal properly stands submitted to this Court.

depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor. *Steelvest*, 807 S.W.2d at 480. The trial court must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists. *Id.* Since a summary judgment involves no fact-finding, this Court's review is *de novo*, in the sense that we owe no deference to the conclusions of the trial court. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

This matter hinges on the interpretation of the indemnification provisions in the Management Agreement between the City and Global. The construction and interpretation of a contract is a matter of law and is reviewed under the *de novo* standard. *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998). If no ambiguity exists, "a written instrument is to be strictly enforced according to its terms which are to be interpreted 'by assigning language its ordinary meaning and without resort to extrinsic evidence.'" *Allen v. Lawyers Mutual Insurance Company of Kentucky*, 216 S.W.3d 657, 659 (Ky. App. 2007) (quoting *Island Creek Coal Co. v. Wells*, 113 S.W.3d 100, 104 (Ky. 2003)). Any

---

[2] Kentucky Rules of Civil Procedure.

issues regarding ambiguity are questions of law to be decided by the court, which we also review *de novo*. *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105 (Ky. 2003). A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations. *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010) (citing *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002)).

The indemnification provision is set out in Article 12 of the Management Agreement. Section 12.1 of the Management Agreement requires Global "to defend indemnify and hold harmless" the City, its employees, and agents,

> against any claims, causes of action, costs, demands, losses, damages, settlements, charges, professional fees or other expenses (including attorneys' fees) liabilities, or damages (collectively, "Losses") of every kind and character suffered by such parties arising out of or in connection with any (a) negligent act or omission, or intentional misconduct, on the part of Manager or any of its employees or agents in the performance of its obligations under this Agreement, or (b) breach by Manager of any of its representations, covenants or agreements made herein.

Section 12.2 qualifies Global's liability by stating, in pertinent part, that Global "shall not be responsible for (1) any negligent act or omission, or intentional misconduct, on the part of City or any of its employees or agents in the performance of its obligations under this Agreement[.]" The primary question in

-7-

this case is whether the City is seeking to enforce the indemnification clause for the conduct of Global's agents or Officer Creager.

Global first argues that the security guards were not acting as its agents. Rather, Global contends that Beaver Dam was acting as an independent contractor. Therefore, the actions of Beaver Dam's employees are not attributable to Global.

But as the City notes, the Management Agreement expressly assigned the security tasks at the Sportscenter to Global. Global cannot avoid liability for negligence in the performance of those tasks by assigning the duty to an independent contractor. *Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). *See also Louisville Cooperage Co. v. Lawrence*, 230 S.W.2d 103, 105 (Ky. 1950) and *Brown Hotel Co., Inc. v. Sizemore*, 303 Ky. 431, 197 S.W.2d 911, 913 (1946). Even if it delegated the security duties to Beaver Dam, Global is still obligated to indemnify and defend the City for claims arising from those actions.

Global next argues that the express language of the Management Agreement only required it to defend and indemnify the City from claims arising from its agents' actions, not from actions by the City's agents, such as Officer Creager. Global concedes that the security guards detained and restrained Hughes during the concert. However, Global contends that Hughes' claims against the

City arose from Officer Creager's investigation and his decision to issue a citation to Hughes. Because the Management Agreement specifically excludes negligence of the City's agents, Global argues that its indemnification duties were never implicated prior to the City's dismissal.

As the trial court noted, Hughes alleged that the guards gave a false account to Officer Creager, which provided Officer Creager with probable cause to issue the citation for disorderly conduct. Officer Creager based the citation for public intoxication on the security guards' account, as well as his own observations and Hughes' admissions. In any event, we agree with the trial court that there was a direct causal connection between the conduct of the security guards and Officer Creager's actions. This connection is sufficient to support the conclusion that Hughes' claims against the City "arise out of" Global's duties under the Management Agreement.

Furthermore, Section 12.2(a) of the Management Agreement only exempts indemnification for acts of the City or its employees "in the performance of its obligations under this Agreement." Officer Creager's actions were not part of the City's obligations under the Management Agreement but were part of his official duties as a police officer. Therefore, we agree with the trial court that the exception to liability in Section 12.2(a) does not apply.

Global next argues that the provision is unenforceable as against public policy. Courts will not disregard the plain terms of a contract between private parties on public policy grounds absent a clear and certain statement of strong public policy in controlling laws or judicial precedent. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 880 (Ky. 2013). In the absence of legislation expressly forbidding enforcement, a contract term is unenforceable on public policy grounds only if the policy asserted against it is clearly manifested by legislation or judicial decision and is sufficiently strong to override the very substantial policies in favor of the freedom of contract and the enforcement of private agreements. *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 178 (1979)).

Global's asserted public policy does not meet this standard. Essentially, Global contends the contractual provision requires it to assume liability for the performance of public duties that are exclusively within the scope of the City's authority. But as the trial court noted, the Management Agreement only requires Global to defend and indemnify claims against the City arising from Global's performance of the Management Agreement.

Given the express qualification in Section 12.2, we conclude that the Management Agreement does not exempt the City from liability for the performance of a duty of public service. *See Cobb v. Gulf Refining Co.*, 284 Ky.

-10-

523, 145 SW.2d 96, 99 (1940). Rather, the Agreement only requires Global to assume the City's vicarious liability for purported negligence of Global's agents. In this case, the Agreement requires Global to assume liability for Officer Creager's actions only to the extent he responded to the actions or representations of Global's agents. Even if the Agreement could be read to require Global to defend and indemnify the City for Officer Creager's alleged negligence in issuing the citation, we cannot find that the requirement would contravene a clearly established public policy because the City and Global were of equal bargaining power. *Speedway Superamerica, LLC v. Erwin*, 250 S.W.3d 339, 343 (Ky. App. 2008).

In the alternative, Global argues that summary judgment was premature. Global contends that the Management Agreement only requires it to indemnify the City for damages arising out of Global's liability. Since there has been no finding that Global or its agents were negligent, then the indemnification provision is not yet applicable.

The City responds that the Management Agreement required Global *to defend and indemnify* the City for *claims* arising out of its performance of the Agreement. The City takes the position that the Agreement requires Global both to defend and to indemnify the City for Hughes' claims, irrespective of Global's own liability. The trial court agreed, focusing on the language requiring Global to

-11-

defend the City from any claims arising from Global's performance of the Management Agreement.

We agree with the trial court's reading of the Agreement. Global refers to *ARA Servs., Inc. v. Pineville Cmty. Hosp.*, 2 S.W.3d 104, 107 (Ky. App. 1999), in which the contract required a food service vendor "to indemnify, defend and hold harmless" the Hospital from any claims attributable to the vendor's negligence in performing the contract. *Id.* at 106. This Court held the vendor must be found liable before the contractual indemnification clause would apply. *Id.* at 107. The Sixth Circuit, applying Kentucky law, followed the same analysis in *Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999). Based on this reasoning, Global maintains that its duties to defend and indemnify the City do not arise until it is found liable for negligence in performing the Management Agreement at issue.

However, the courts in *ARA Services* and *Thompson* only addressed the respective duties to indemnify under Kentucky law. A duty to defend is both distinct from and broader than a duty to indemnify. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279-80 (Ky. 1991). Thus, the holdings in those cases do not purport to limit the scope of a contractual duty to defend.

We agree with Global that it had no duty to defend against claims which arose from actions which were clearly outside of the scope of its duties under the Management Agreement. *See Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 79 (Ky. 2010). But under the clear language of the Agreement, Global had a duty to defend the City from claims which could reasonably be construed to arise from its obligations under the Agreement. As previously noted, Hughes' claims were based, in significant part, upon the guards' performance of the security duties allocated to Global under the Management Agreement. Under the circumstances, we agree with the trial court that the duty to defend was not contingent upon a finding of Global's liability for the underlying claims. Therefore, we conclude that there were no genuine issues of material fact precluding the entry of summary judgment for the City and Officer Creager.

Finally, Global argues that the Management Agreement only requires it to indemnify the City for attorney fees and costs incurred in defending Hughes' claim. Consequently, Global contends the additional award of fees incurred in enforcing the indemnification agreement was not authorized. In response, the City states that the Agreement requires Global to indemnify the City for all costs associated with the claim, including fees incurred in enforcing the Agreement.

The general rule in Kentucky is that, "with the exception of a specific contractual provision allowing for recovery of attorneys' fees or a fee-shifting

statute, . . . each party assumes responsibility for his or her own attorneys' fees[.]" *Aetna Cas. & Sur. Co. v. Com.*, 179 S.W.3d 830, 842 (Ky. 2005). Thus, any authorization for attorney fees must be found in the plain language of the Management Agreement. Section 12.1 requires Global to indemnify the City for any claims or losses, including attorney fees, either "arising out of" (a) any negligent act on the part of Global; or "(b) [any] breach by Manager of any of its representations, covenants or agreements made herein." Furthermore, under Section 12.3, Global "shall be responsible, at its sole cost and expense, for controlling litigating defending and/or otherwise attempting to resolve any proceeding, claim, or cause of action underlying such matter," except that the City may elect to participate or assume control of the defense under specified circumstances.

Under Section 12.1(a), Global's obligation to defend and indemnify clearly applies to the City's attorney fees and costs accrued during proceedings involving Hughes' claims against the City. Global does not dispute the trial court's award of the City's attorney fees and costs incurred in defending Hughes' claim. The City further argues, and the trial court agreed, that Global's actions amounted to a breach of its duty to defend, thus implicating its obligation to pay attorney fees under Section 12.1(b).

Global takes the position that the language of Section 12.1(b) is ambiguous and should be construed against the City as the drafter of the Management Agreement. Global notes that the Management Agreement does not clearly define failure to defend as a breach of the Agreement. Consequently, Global argues that the Agreement does not expressly allow the City to recover its attorney fees expended in seeking summary judgment to enforce the indemnification provision.

However, Global does not argue that the trial court clearly erred in finding that its failure to defend the City on Hughes' claims amounted to a breach of its duties under the Management Agreement. Similarly, Global does not contend that its decision not to defend the City from Hughes' claims was justified under the Management Agreement. Lastly, Global does not argue that the City improperly exercised its option to defend itself from Hughes' claims.

Therefore, we conclude that the additional award of attorney fees was supported by the terms of Section 12.1(b). Where the contract authorizes the award of attorney fees under these circumstances, the trial court's award of attorney fees is largely a matter of discretion. *See Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 787 (Ky. 2017). Since the trial court found that Global breached its duty to defend, we find no abuse of discretion in the additional award of attorney fees to the City.

Accordingly, we affirm the judgment of the Daviess Circuit Court awarding attorney fees to the City.

ALL CONCUR.


BRIEFS AND ORAL ARGUMENT
FOR APPELLANT:

David T. Klapheke
Louisville, Kentucky

BRIEF FOR APPELLEES CITY OF
OWENSBORO AND OFFICER
AARON CREAGER:

Patrick D. Pace
Stephen C. Pace
Owensboro, Kentucky

ORAL ARGUMENT FOR
APPELLEES CITY OF
OWENSBORO AND OFFICER
AARON CREAGER:

Patrick D. Pace
Owensboro, Kentucky