## Schmidt v. City of Newport, et al.

(Decided May 20, 1919.)

### Appeal from Campbell Circuit Court.

1. Municipal Corporations—Exercise of Care to Keep Streets in Safe Condition.—A municipality is under the duty of exercising ordinary care to keep and maintain its streets and pavements in reasonably safe condition for travel, but it is not an insurer of the safety of persons traveling thereon.

2. Municipal Corporations—Unsafe Condition of Pavement—Personal Injuries.—Where a municipality allows a property owner to use the pavement adjacent to his property for advertising purposes,

and the use of the pavement is such as to place an extra burden and servitude thereon, and the use of the pavement by the property owner renders it not reasonably safe, and by reason of its unsafe condition a pedestrian is caused to fall and is injured, both the city that allowed such use of the pavement, and the property owner who made such use of the pavement, are responsible in damages at the suit of the injured person, and they may be joined in one action.

3. Municipal Corporations—Use of Pavement for Advertising Purposes—Personal Injuries.—A word placed in the pavement but which does not interfere with its free use by the public, nor render it dangerous or unsafe, will not of itself attach liability to the property owner for injury to one falling upon such pavement; but a pavement made of slick, slippery tiling, used for advertising purposes by a theater, is such a use and servitude of the pavement by the abutting proprietor as will fix responsibility upon him for injury where such use was the proximate cause thereof.

GEORGE J. HEROLD and PHIL D. RYAN for appellant.

BRENT SPENCE for City of Newport.

WILLIAM A. BURKAMP for Frankel Amusement Company.

OPINION OF THE COURT BY JUDGE SAMPSON—Reversing.

This action by Mrs. Schmidt against the city of Newport and the Frankel Amusement Company, incorporated, was commenced in the Campbell circuit court on June 6, 1917, to recover damages for personal injury sustained by her in a fall on the sidewalk in front of the Hippodrome theatre, in the city of Newport, on the evening of March 16. Both general and special demurrers were filed by the defendants and the general demurrer sustained and the special demurrrer overruled to the original petition. Thereafter an amended petition was filed by Mrs. Schmidt, but without demurrer or other plea she filed a second amended petition in lieu of both of the former pleadings and to this last a general demurrer was filed by each of the defendants and sustained, and plaintiff declining to plead further the action was dismissed, and she prosecutes this appeal.

The original petition was very inaptly drawn and did not state a cause of action. The amended petition was a great improvement upon the original petition and the second amended petition was very much better in form and substance than the two preceding. It was in the nature of a substituted petition, and appellant Schmidt

in her brief states that she relies upon the second amended petition exclusively. In this pleading it is alleged that the city of Newport is a municipal corporation of the second class, and that the Frankel Amusement Company is a corporation, organized under the laws of this Commonwealth; that the amusement company owns and operates and has at all times mentioned owned and operated a theatre at 711-713 Monmouth street, in the city of Newport; that the sidewalk in front of the building is 12½ feet wide; that it was originally built of concrete and maintained by the city; that the amusement company in building its show house obtained permission from the city to take up a certain part of the concrete pavement immediately in front of its entrance and replace the same with tiling, on which it was to and did place the word "Hippodrome," the name of the theatre, for advertising purposes; that the lobby of the theatre was floored with tiling and this tiling allowed to extend out on to the pavement about three feet and for a distance of twenty-seven feet along in front of the building; "that this condition had prevailed for about three years; that said tiling on the sidewalk was constructed and maintained at all times hereinafter stated of a slippery, smooth, glazed and glossy surface and rendered said sidewalk unreasonably unsafe and dangerous for public travel by pedestrians, and especially so during and immediately after it had rained or while said tiling sidewalk was wet"; that said sidewalk, including said tiling thereon, was negligently constructed and maintained "at all times herein mentioned at an unreasonably unsafe and dangerous grade and was rendered unreasonably unsafe and dangerous for public travel by pedestrians" that said defendant, the Frankel Amusement Company, "at all times herein set out while operating said theatre, and on March 16, 1917, allowed said sidewalk to be and remain in the aforesaid unreasonably unsafe and dangerous, smooth, glazed, glossy and slippery condition and unreasonably unsafe and dangerous grade"; that said defendant, the Frankel Amusement Company at all times herein set forth, while owning, operating and controlling said theatre or show house, and on March 16, 1917, for the purpose of advertising its theatre and business, allowed said tile to remain in and upon said sidewalk, and the word "Hippodrome" in and upon said tiling upon said sidewalk; that the amusement company placed and maintained an additional bur-

den and servitude in and upon the use of said public sidewalk; that the city of Newport knew of said condition after same was constructed and maintained and did or could, by the exercise of ordinary care on its part, or on the part of its officers, have known of the said dangerous and defective condition which had existed on March 16, 1917, and continuously prior thereto for more than three years, and the same was known long enough to the defendant city of Newport, if exercising ordinary care, to have eliminated or removed same; that the plaintiff while walking along said sidewalk on the evening of March 16, 1917, exercising ordinary care for her own safety, slipped and fell on said tiling pavement by reason of its dangerous and unsafe condition and broke her right leg at or about her knee, and otherwise injured her to her damage in the sum of $10,000.00. The petition also set forth grounds for special damage, medical treatment, etc. Taking the whole petition together, we are convinced it presents a cause of action against both defendants. The plaintiff, under the allegations of the petition, could have maintained an action against either or both defendants.

While a city is not an insurer of the safety of persons traveling upon its streets, it is under the duty of exercising ordinary care to keep and maintain its streets and pavements in a reasonably safe condition for use by the public once it has undertaken so to do. Liability does not arise until the city, through its authorized officers, receives or has reasonable opportunity to obtain knowledge of the defective condition of the street or pavement, but the municipality will be charged with notice of all defects of which it could, by the exercise of reasonable care, have learned. And if it authorize a property owner, such as the Frankel Amusement Company, to use the pavement along the street for purposes of its own and in so using and occupying the pavement, reasonable care is not exercised for the safety of the traveling public, and injury results directly and proximately therefrom, the city as well as the property owner is liable in damages. As said in the case of the Hippodrome Amusement Company v. Carius, 175 Ky. 783, if the property owner is allowed an extraordinary use of the sidewalk for his private convenience, or for the benefit of his property, and such use constitutes a servitude of the sidewalk for his private benefit, or use, and injury arises from the de-

fective condition of the sidewalk because of such servitude placed upon it, the property owner is liable primarily to the individual for the injury sustained. This liability, however, does not absolve the city from responsibility. Baumeister, &c., v. Markham, 101 Ky. 132.

The rule appears to be well established in this jurisdiction that a municipality is not responsible for injury to one falling upon a pavement unless the pavement was inherently dangerous or was constructed and maintained according to a plan which was not reasonably safe, and which reasonably prudent persons would not have adopted or maintained. And as said in the City of Lebanon v. Graves, 178 Ky. 755, "it makes little if any substantial difference, so far as the liability of the city is concerned, whether the unsafe and dangerous condition of the street was due to the defective plan, or due to conditions that the city permitted to come up after the construction of the street pursuant to the plan that contemplated the street reasonably safe for public travel; and that when a city undertakes to construct or reconstruct a street or pavement, it is under a duty to so construct and maintain it as that it will be reasonably safe for public travel; and this duty is a continuing one, and no plan will justify the construction of a pavement so slick and slippery as to be unsafe and dangerous."

After setting forth the slippery and dangerous condition in that case, the opinion proceeds: "We think there was ample room for reasonable difference of opinion as to whether this pavement was reasonably safe for public travel. Indeed, the decided weight of the evidence shows that it was palpably unsafe and dangerous for public travel. Whenever a particular place in a pavement is laid in such condition and so remains for about three years as that travelers walking on it are seen to slip or fall almost every day, and others, who are familiar with its danger, avoid it altogether by going out in the street, it is manifest that such pavement is unsafe and dangerous. We have, therefore, no difficulty in ruling that the trial court properly submitted the case to the jury."

From the allegations of the petition, the pavement at the point where Mrs. Schmidt fell was constructed and maintained in a "slippery, smooth, glazed and glossy" condition, which rendered "the walk unfit and unreasonably unsafe and dangerous for public travel by pedes-

trians, and the "sidewalk, including said tiling thereon, was negligently constructed and maintained at all times therein mentioned at an unreasonably unsafe and dangerous grade, and was rendered unreasonably unsafe and dangerous for public travel." It is argued that these allegations are too general. A general allegation of negligence is sufficient. An averment of negligence is not the statement of a mere legal conclusion. Newman's Pleading & Practice, secs. 3240 and 3291.

It would appear that the original construction was upon such heavy grade and of such a smooth and slippery and slick surface as rendered the pavement inherently dangerous to pedestrians. The mere fact that a pavement is constructed of smooth tile is not sufficient in itself to render it so dangerous and unsafe as to fix liability upon a municipality for injury to persons falling thereon, nor to even raise a presumption that such walk is inherently dangerous. Indeed, we are inclined to the opinion that a tile pavement is as safe as a concrete pavement, and in addition is quite as durable and much more beautiful. But if it is glazed and so highly polished as to be slick and slippery it may become inherently dangerous and render the city liable in damages for injuries received by persons who fall thereon, but this liability rests upon the inherent slippery nature of the walk and not upon the material, color or advertisement written or printed thereon. Nor do we regard the word "Hippodrome" in the advertisement as such a burden or servitude as was calculated to impose liability upon the theatre company in the absence of other contributing facts and circumstances. But the tiling in the pavement was itself intended as an advertisement and was calculated to attract attention and render the theatre conspicuous and thus become an asset and benefit to its business. In this way the pavement was used for the special benefit of the theatre and its business, and this use was an extra burden and servitude upon the pavement. If the pavement was maintained in such unsafe condition as to render the city liable for the injury sustained by Mrs. Schmidt, then the Amusement Company was also liable, and the two were not improperly joined in the action.

Judgment reversed with directions to overrule the general demurrer to the second amended petition, and for other proceedings not inconsistent with this opinion.

Judgment reversed.