## DOWNING v. DRYBROUGH.

Court of Appeals of Kentucky.

June 13, 1952.

Robert E. Hogan, Louisville, for appellant.

Mahan, Davis & Mahan, Louisville, for appellee.

COMBS, Justice.

The appellant, who was plaintiff in the lower court, contends the appellee was negligent in the operation of his parking lot and that by reason of such negligence she was caused to fall and break her arm. The trial court directed a verdict for appellee at the close of the testimony for appellant.

The parking lot in question is located on Fifth Street in Louisville. In order to facilitate the parking of automobiles, the lot is divided into sections or blocks. Each section or block is 20 feet wide. A division strip of concrete coping bisects each section so as to provide a 10-foot lane on each side of the coping. The coping is about 10 inches high and 8 or 9 inches wide. Cars are parked parallel in each lane with the front of each vehicle pointed toward the coping or division strip. Adjacent to each parking lane is a 20-foot aisle which provides a means of ingress and egress for automobiles and for the pedestrians in going to and from their vehicles.

At approximately 8 o'clock on a November evening the appellant and her daughter drove their automobile into the parking lot. The daughter was driving and this was appellant's first visit to the lot. The daughter parked the car in the space designated by the attendant. Appellant got out of the car and instead of going to the aisle through which she had entered, she started toward the aisle on the opposite side of the section. Before reaching the aisle she stumbled on the division strip, fell, and broke her arm.

A sketch showing the physical outlay of the lot was filed by stipulation of the parties. The sketch shows the location of a number of lights around the perimeter of the lot, but counsel for appellant expressly declined to stipulate any facts concerning the candlepower or illuminating qualities of the lights. Appellant testified it was dark in the lot, "and that's how come me to fall." She testified she didn't know anything about the lights.

No Kentucky case directly in point has been cited in the briefs, and we have found none. The appellant relies strongly on McFarland v. Sears, Roebuck & Co., Mo.App.,

91 S.W.2d 615. The appellee relies just as strongly on Brooks v. Sears, Roebuck & Co., 302 Mass. 184, 19 N.E.2d 39, 41. Except for the difference in the lighting of the premises, the material facts in both cases are very similar to the facts here. In the Brooks' case the accident occurred at dusk but, as stated in the opinion, "the plaintiff could see perfectly well." It was held that a directed verdict for the defendant should have been given. In the McFarland case the accident occurred at 8 p. m. in the month of January and, as we read the opinion, there was no contention the premises were properly lighted. It was held that the issue of defendant's negligence was a question for the jury.

■ In this case the trial judge apparently based his decision to direct a verdict on the theory that appellant was guilty of contributory negligence as a matter of law in failing to depart from the lot by the same aisle through which she had entered. We think this was error. There was no warning sign or directions to guide her, and we are unable to agree that as a matter of law she was guilty of negligence in electing to depart through one aisle instead of the other.

The appellee insists that the division strip was not a dangerous or unsafe obstruction. We agree that it was not of itself dangerous or unsafe. It is common knowledge that many parking lots are so constructed and that people use them without injury or inconvenience. The troublesome question is, did this strip of concrete, 10 inches in height and 8 or 9 inches in width, become a dangerous or unsafe obstruction when considered in connection with the lighting conditions existing at the time of the accident? If the lot was not adequately lighted, we think the division strip might reasonably be said to constitute a dangerous obstruction amounting to a hazard to those using the lot. As mentioned above, the sketch filed by the parties shows the location of certain lights around the perimeter of the lot, but the record is completely silent as to whether these lights were sufficient to provide adequate illumination, whether they were in good condition, or even whether they were burning at the time of the acci-

dent. In this state of the record we think the court erred in directing a verdict for the defendant. If it had been shown that the lot was adequately lighted, considering the purpose for which it was used—or, stated differently, that defendant had used ordinary care in lighting the lot so as to keep it in a reasonably safe condition—we think a directed verdict for the defendant would have been proper. That question, of course, is one of fact to be determined as any other fact, and cannot be determined without evidence of the lighting conditions which actually existed at the time appellant was injured.

■ The appellant also complains of the trial court's refusal to admit the opinion testimony of the witness O'Brien, a professional engineer, who qualified as an expert designer of parking lots. This witness offered to testify that in his opinion a parking lot with a coping wall or division strip creates a hazardous condition, and that such construction is bad engineering practice. We think the testimony was properly rejected. As stated above, we are of the opinion the division strip in appellee's lot was not of itself a dangerous obstruction or a hazard to the public. Even if we had any doubt about this, it seems to us that the average juror would be in as good position as would an expert to determine whether the strip was dangerous or hazardous.

The judgment is reversed for proceedings not inconsistent with this opinion.