**Arthur WEATHERS, Jr., Appellant,**

**v.**

**ESTATE of Charles MORRIS et al., Ruth C. Morris and Frank A. Garlove, Co-executors, Citizens Fidelity Bank & Trust Co., The Fabric Shop, Inc., Appellees.**

Court of Appeals of Kentucky.

Nov. 12, 1965.

J. J. McCarthy, Louisville, for appellant.

Norman A. Curtis, Jerry A. Lloyd, Louisville, for appellees.

PALMORE, Judge.

The appellant, Arthur Weathers, Jr., suffered a broken arm when he slipped and fell on a rain-wet sidewalk on South Fourth Street in Louisville. His suit against the owners and lessee of the store building in front of which the accident took place resulted in a directed verdict and judgment for the defendants, and he appeals.

Weathers was employed as a waiter at a restaurant on Fourth Street between Market and Main Streets. On November 13, 1961, he had left the restaurant at about 2:00 P.M. and was walking southward along the west sidewalk on Fourth Street between Market and Jefferson Streets with the intention of taking a bus at Walnut Street. It was raining hard, and although he did not have an umbrella or raincoat and was getting wet he says he was proceeding at a normal pace. He had walked this route many times in all kinds of weather. He had on a new pair of shoes with leather soles and heels, which he had bought a week or so before and had worn four or five times. As he passed in front of the Fabric Shop at 218 South Fourth Street, the premises owned and occupied by the respective appellees, and stepped on a section of terrazzo surface his right foot slipped and he fell on his left side and arm. His vision of the surface at this point was clear and the way was unobstructed. There was no foreign substance or material on the sidewalk other than water from the rainfall. Though he had passed this way before, Weathers does not know whether he had ever walked on the terrazzo area in front of the Fabric Shop.

The sidewalk at the place of the accident is nine feet wide. The entrance of the Fabric Shop is 7½ feet wide. It is paved with terrazzo, and this surface extends in the shape of a half-moon a distance of

about four feet from the building line toward the curb, its arc lacking some six inches of reaching the center line of the sidewalk as a tangent. Inlaid within the semi-circular area is the word "Kinney's," evidently the name of a former occupant of the store building. The remaining portion of the sidewalk consists of weathered concrete. From photographs introduced in evidence the terrazzo section also appears to be well weathered, as it is lined by several narrow cracks and shows other marks of time. It was there at least as long ago as 1938, when the property was first leased to the Fabric Shop.

According to the expert testimony of a civil engineer the half-moon area of terrazzo that forms a part of the public walkway slopes outward and downward from the building line to the circular line at which it joins the concrete surface. He said there is a city regulation that the cross-slope of a sidewalk shall not exceed a quarter-inch per foot and that this particular segment "slopes slightly more; a little more than one-fourth of an inch per foot, a little less than three-eighths of an inch per foot," being in some places as much as three-quarters of an inch per foot. Whether such regulation was in force when it was constructed, he was unable to say with any assurance because he did not know when the terrazzo was laid. Nor did he say whether the alleged regulation is an accepted criterion of what is considered a safe slope and what is not.

The principal thrust of the engineer's testimony was directed at the use of an untreated terrazzo surface for outside walking. It was his opinion that because of its finer and smoother texture it is much more dangerous when rained upon than is an ordinary concrete surface. He further stated that terrazzo can be etched with acid or treated with a liquid composition to decrease the danger of slipping, but there was no evidence of such treatment in this instance. Asked on cross-examination whether terrazzo tile and marble are not commonly used for flooring, he replied as follows: "Terrazzo tile is not generally used in exterior sidewalks. There are many of them in Louisville, but it is not general."

The argument for Weathers relies to a considerable extent on Schmidt v. City of Newport, 184 Ky. 342, 212 S.W. 113 (1919), and for the appellees on Curtis v. Traders National Bank, 314 Ky. 765, 237 S.W.2d 76 (1951).

In the Schmidt case a general demurrer against the petition had been sustained, and on appeal it was held that the allegations stated a cause of action. With respect to the negligence of the defendants, the City of Newport and a theater company, those allegations were that the company had paved a portion of the public sidewalk in front of its theater with tiling "of a slippery, smooth, glazed, and glossy surface and rendered said sidewalk unreasonably unsafe and dangerous for public travel by pedestrians, and especially so during and immediately after it had rained, or while said tiling sidewalk was wet; that said sidewalk * * * was negligently constructed and maintained * * * at an unreasonably unsafe and dangerous grade, and was rendered unreasonably unsafe and dangerous for public travel by pedestrians," etc.

This court was never called upon to determine whether the actual facts of that case measured up to a cause of action, but the following excerpt from its opinion on the pleadings sets forth the principle it regarded as applicable:

"It would appear that the original construction was upon such heavy grade and of such a smooth and slippery and slick surface as rendered the pavement inherently dangerous to pedestrians. The mere fact that a pavement is constructed of smooth tile is not sufficient in itself to render it so dangerous and unsafe as to fix liability upon a municipality for injury to persons falling thereon, nor to even raise a presumption that such walks are inherently dangerous. Indeed, we are inclined to the opinion that a tile pavement is as safe as a concrete pavement, and in addition is quite as durable and much more beautiful. But if it is

glazed and so highly polished as to be slick and slippery, it may become inherently dangerous," and thus render the responsible parties liable. Schmidt v. City of Newport, 184 Ky. 342, 212 S.W. 113, 115 (1919).

In the Curtis case a lady slipped and fell on the marble floor of a vestibule leading into the defendant's bank. It was raining outside and, in the words of the opinion, "she was caused to fall by the wet, slippery, marble floor in the vestibule where the water had been tracked and blown in by the wind when the outer door was opened." Affirming a directed verdict and judgment for the defendant, the court went on to say:

"It is quite generally held that there is no liability to a customer who slips because of water, mud, etc. in such places and is injured by the fall, the floor being properly constructed and not inherently dangerous. * * * The floor of the vestibule was standard and customary, without incline or defect. The absence of such inherently dangerous condition * * * takes the case out of such as Schmidt v. City of Newport * * *. Negligence in the maintenance of premises, like in all other cases, is to be measured by the danger to be apprehended to persons of average intelligence who are exercising ordinary care and prudence for their own safety. Accepting the predicate that the bank was chargeable with knowledge that water on the floor made it slippery, since that is known to everybody, yet we must likewise accept the proposition that it is a common, usual and proper arrangement and that it is not foreseeable that a patron, coming into the vestibule during a shower of rain, will not also take cognizance of the slippery condition. Bridgford v. Stewart Dry Goods Co., 191 Ky. 557, 231 S.W. 22." Curtis v. Traders Nat. Bank, 314 Ky. 765, 237 S.W. 2d 76, 77 (1951).

For Weathers it is contended that two circumstances distinguish this from the Curtis case: (1) Curtis did not involve a public right-of-way; and (2) in Curtis there was no slope to the floor of the vestibule, whereas in this instance the terrazzo area in front of the entrance to the Fabric Shop had a slope varying from one-half to three-quarters of an inch per foot. The first of these is a distinction without a difference. Certainly the duties of a commercial establishment to customers within its premises are no less than those it owes the passing public, even if it be conceded (though we find it unnecessary in this case to decide) that the maintenance of a special type of surface in or on the public way constitutes a servitude for which it is responsible.

■ With regard to the slope, although the engineer testified that it was "slightly more" than the degree permitted by the nebulous city regulation he mentioned (but which was not otherwise produced in evidence), we are impressed by the complete absence of any other suggestion that a slope of half to three quarters of an inch per foot in a sidewalk is unreasonable, unusual or dangerous. Indeed, he did not say so himself. Obviously if a surface were inherently dangerous by reason of a slippery composition or finish, any slope would aggravate the danger, and a sharp slope could render hazardous a surface that might otherwise be safe. But we do not have here a situation that fits the allegation in Schmidt v. City of Newport, 184 Ky. 342, 212 S.W. 113 (1919), to the effect that the sidewalk was "constructed and maintained * * * of a slippery, smooth, glazed, and glossy surface." Everyone is familar with terrazzo; everyone knows it is hard and smooth; no one needs to be warned that it is more slippery wet than dry, and in either case more slippery than some other types of surfacing material. But this particular section of terrazzo had been walked on by passing crowds of Louisville's busiest shopping district for 25 years or more. It was neither glazed, glossy, nor polished. Whatever threat existed in the form of its slight incline and wet condition was, in our opinion, readily observable to any ordinary pedestrian who chose to walk on it.

As suggested in Curtis v. Traders National Bank, 214 Ky. 765, 237 S.W.2d 76, 77 (1951), conceding that those responsible for the condition of the sidewalk were chargeable with knowledge that water would make it slick, since that is known to everybody, it is equally expectable that a user of the sidewalk in the rain, wearing new shoes with leather heels (which, as any man who ever has worn them knows, themselves make the footing more hazardous on a hard surface), would also take notice of the circumstances and exercise a commensurate degree of care for his own safety.

We conclude that the evidence was not sufficient to authorize a finding of negligence on the part of the defendants and that a directed verdict was proper.

The judgment is affirmed.