**Fannie JONES, Appellant,**

v.

**WINN–DIXIE OF LOUISVILLE, INC.,**
**Appellee.**

Court of Appeals of Kentucky.

May 22, 1970.

Rehearing Denied Nov. 13, 1970.

J. J. McCarthy, Leibson & Leibson, Louisville, for appellant.

Alex Rose, John K. Gordinier, Curtis & Rose, Louisville, for appellee.

PALMORE, Judge.

The appellant, Fannie Jones, brought this suit against the appellee, Winn-Dixie of Louisville, Inc. (hereinafter Winn-Dixie), for personal injuries (a broken hip) sustained when she tripped over a concrete abutment on the premises of one of Winn-Dixie's grocery stores in Louisville. The trial court directed a verdict for the defendant at the close of the plaintiff's evidence. It is our conclusion that the evidence at this stage of the trial was sufficient to warrant submission to the jury.

The premises in question are located on the east side of Shelby Street in the block south of Eastern Parkway. The store building itself is set back from Shelby Street, with vehicular parking areas on the west, south, and east. The entrance to the building is at its southwest corner. A public sidewalk runs southward from Eastern Parkway along the east side of Shelby Street to the north boundary of the Winn-Dixie lot, but from that point southward has been removed so that automobiles may be turned directly off Shelby Street into the parking spaces lining the west side of the store. Immediately along the west wall of the store (facing Shelby Street) is a concrete sidewalk 5 feet wide running from the entrance northward a distance of 120 feet to the Winn-Dixie property line and then at right angles westward to the street, so as to connect with the public sidewalk leading toward Eastern Parkway. Running along the north line of the Winn-Dixie property, and thus also the north line of the Winn-Dixie sidewalk we have described, is a curb-like abutment or retaining wall 3½ to 4 inches high and 4 inches thick. It is made of concrete the same color as the sidewalk and was not painted or marked. Neither was the sidewalk painted or marked in any way.

The next building to the north is what was once a brick residence but is now being used for business purposes. It is separated from the Winn-Dixie property by a concrete driveway leading eastward from Shelby Street. Its front porch is in line with the sidewalk bordering the west wall of the Winn-Dixie store. The driveway is about a foot lower than the Winn-Dixie sidewalk, so that the concrete abutment heretofore mentioned, which is 4 inches high on the south or Winn-Dixie side, is 16 inches high on the north side. The Winn-Dixie sidewalk and abutment and the adjacent driveway are of the same type of material and color.

The accident took place at about 7:00 P. M., which was after dark, on December 16, 1966. Mrs. Jones, then 73 years old, had arrived at the store in an automobile with her two daughters and granddaughter. While the daughters were shopping in Winn-Dixie Mrs. Jones went across the street with her grandchild to another store, and upon returning to the Winn-Dixie store she was unable to find the daughters and came to the conclusion that they had left her. The home in which she resided with one of the daughters was within walking distance in a neighborhood to the north of Eastern Parkway, so she started homeward on foot, proceeding out of the Winn-Dixie store and northward on the sidewalk along its west wall. She had never walked this way before. When she reached the north end of the sidewalk, where it is necessary to make a right-angle turn to the left, she tripped over the abutment strip and fell onto the concrete driveway on the other side.

Mrs. Jones testified that she was looking straight ahead but did not see the abutment; that "it just looked like a pavement all through there." The light was very dim and the abutment cast a shadow. On cross-examination Mrs. Jones admitted that she could have seen the abutment had she been looking at it, and this seems to be the principal basis on which the trial court found her to have been contributorily negligent as a matter of law. The fair import of her testimony however, is that she could have seen the abutment only if she had been walking with her eyes cast downward at the area directly in front of her feet: "I would had to been walking along looking down, but I was looking straight ahead."

Joseph G. Dean, a registered safety engineer of considerable experience, examined the scene both in daylight and under the nighttime conditions prevailing at the time of the accident and testified that he "found a deceptive condition and a hazardous condition" at night by reason of the fact that "the entire sidewalk here is a shadowed area * * *. The downward grade of the sidewalk leads directly to the edge of a retaining wall. It turns immediately left, so

that individuals can get down through to the other areas if they so need to. The light intensity being in a shadowed area, and the colorization of the sidewalk and the retaining wall being in the same pattern, it is difficult to decipher the end of the sidewalk. There are no signs here to indicate the end. There is no arrow of any description designating an immediate left turn. There is no basic standard handrail on this area to protect against a party falling a depth of 16 inches, should they step over into the driveway of private property adjacent. There is no contrast color of painting to assist or designate or help the individual to formulate an opinion that there is a change, that there is a difference, and take added precautionary control of themselves."

On cross-examination Mr. Dean conceded that as he approached the abutment he could see it "with some reservations," and on redirect questioning explained this answer as follows:

Q. "You said that it could be seen but with reservations. What reservations were you talking about, what reservations?"

A. "I had critically examined the area in the daylight, and I knew the physical conditions. I critically examined it in the night in the shadowed area. The change in the shadowed area would not permit me the visibility of the retaining wall near so well as it could be seen in the daylight. Those are the physical facts with regard to the better observation."

Q. "When you were looking at it at night, you had already seen it there in the daytime, is that correct?"

A. "I had, sir. I had a comprehensive mental picture."

Except for Mrs. Jones' testimony that she could have seen the abutment if she had been looking right at it, there is nothing to distinguish this case from Downing v. Drybrough, Ky., 249 S.W.2d 711 (1952),

in which a parking lot patron fell over a strip of concrete coping separating the parking lanes. In fact, the evidence for Mrs. Jones is more favorable than the evidence found sufficient to present a jury issue in that case. The abutment in this case, being lower, inherently was less noticeable. In *Downing* there was no evidence as to the sufficiency of illumination. Here there was positive testimony showing poor lighting conditions and the deceptive appearance of the sidewalk and abutment. Here also photographs were introduced, in which at first glance it would appear that the abutment is simply a shadow falling across the sidewalk.

■ In pedestrian fall-down cases arising out of defects in or obstructions on the walking surface the visibility factor is vital. At night and under poor lighting conditions it is quite possible for an ordinarily prudent person exercising reasonable care for his own safety not to notice something that would be obvious in broad daylight. In one case this court went so far as to say that even though a pedestrian may have actual knowledge of a defect, "he is not chargeable with contributory negligence if he overlooks it because his mind is distracted for the moment. This is particularly true if the accident occurs at night." City of Louisville v. Verst, 308 Ky. 46, 213 S.W.2d 517, 520 (1948). One using a walkway provided for that purpose "is not required to anticipate that danger may arise from its use but may proceed on the assumption that such a walkway is in reasonable safe condition." City of Nicholasville v. Scott, Ky., 388 S.W.2d 612, 614 (1965). An invitee on store premises has a right to assume that the floor is free of obstructions of a dangerous nature, and therefore is not required to look directly downard at his feet with each step taken. Winn-Dixie of Louisville, Inc. v. Smith, Ky., 372 S.W.2d 789, 792 (1963). He need only "observe generally the surface upon which he is about to walk." Humbert v. Audubon Country Club, Ky., 313 S.W.2d 405, 407 (1958).

We think that unless it is clearly visible a curbing at the end of a walkway, with open space beyond, is to be equated with an obstruction on the walkway itself. If it is reasonably foreseeable that a person exercising ordinary but not extraordinary care will fail to observe it and assume the flat surface continues, then it amounts to a trap, and its existence constitutes negligence on the part of those responsible for the maintenance of the premises on which it is located. In such a case negligence and contributory negligence are measured by the same test and are mutually exclusive. If a pedestrian exercising ordinary care under the circumstances would have observed and avoided the abutment, *ipso facto* Winn-Dixie was not negligent and is not liable, because it was not required to anticipate that Mrs. Jones would fail to use ordinary care for her own safety. On the other hand, if a jury determines that Mrs. Jones was *not* negligent, by the same token Winn-Dixie *was* negligent, because the actions of pedestrians exercising ordinary care are within the scope of foreseeability.

It would serve no useful purpose to enlarge this opinion by an analysis of the various decisions cited in the briefs and not otherwise discussed. Each is distinguishable on the facts. The line of demarcation in cases of this kind is drawn according to the presence or absence of conditions affording reasonable room for a difference of opinion as to whether a plaintiff exercising ordinary care would have failed to see a defect or obstruction which, except for such conditions, would have been clearly visible and should have been avoided. In this case we think that is a question to be resolved by a jury in the time-honored fashion of our legal system.

The judgment is reversed with directions for a new trial.

MILLIKEN, OSBORNE, REED, and STEINFELD, JJ., concur.

NEIKIRK, J., not sitting.