**O'CONNOR & RAQUE COMPANY,**
**Appellant,**

**v.**

**Clifford E. BILL, Appellee.**

Court of Appeals of Kentucky.

Dec. 17, 1971.

Marshall B. Woodson, Jr., Louisville, for appellant.

Cletus E. Amlung, Louisville, for appellee.

PALMORE, Judge.

On the afternoon of January 6, 1967, the appellee, Clifford Bill, a business invitee of the appellant, O'Connor and Raque Company, which sells office supplies and equipment, fell to the sidewalk upon emerging from the front doorway of the company's store building in Louisville and broke his hip. He brought suit on the ground of negligence and recovered a judgment in the amount of $14,580.50, from which the company takes this appeal, contending (1) that as a matter of law the company was not negligent; (2) that Bill was himself negligent as a matter of law; and (3) that the trial court erred in (a) admitting certain testimony with respect to the building code of the City of Louisville, (b) refusing to admit evidence that no similar accidents had occurred during 11 years in which other customers had used the doorway under the same conditions and that those conditions are common to many other business premises in the community,

and (c) excluding the testimony of three witnesses offered for the company.

Our conclusion that the defendant company was entitled to a judgment n. o. v. obviates discussion of the last two points.

■ Without pressing the point, the company suggests also that only the owner, and not the tenant, is liable for injuries to a third party resulting from a dangerous condition of the premises antedating the inception of the tenancy. However, the general rule seems to be that quite aside from the landlord's responsibility, *vel non*, the tenant is held liable if he has notice of the condition or, with respect to an invitee, in the exercise of ordinary care should have discovered and corrected it. Cf. 49 Am.Jur.2d 958, 959 (Landlord and Tenant, § 988); 52 C.J.S. Landlord & Tenant § 435, p. 206; Restatement, Torts 2d, §§ 328E, 343; Harper and James, The Law of Torts, § 27.16 (1956); Prosser on Torts, § 63 (4th ed., 1971).

The building in question is located at 829 East Market Street, is owned by E. J. Raque and wife, and has been leased by them to the company, of which Mr. Raque is the president, since 1956. It is an old building which the Raques purchased in 1955 and remodeled prior to its occupancy by the company in 1956. Its physical condition has remained substantially unchanged since that time. It has a standard-size front door (about 3 feet wide) which is made of clear, transparent glass and swings inward. This door is virtually flush with the front wall, which abuts the public sidewalk, but since the first or main floor of the store is about six inches higher than the sidewalk, so is the bottom of the door. A person entering the store pushes the door inward and immediately steps up, and upon leaving pulls the door inward and steps forward and then down.

On the day of the accident Bill visited the store to make a purchase. He had been there twice before within the previous 18 days and had used the doorway without

incident. He says he had not consciously noticed the step-up (or drop-off, as we shall call it) and that his actions in using it had been "mechanical." As he emerged on this particular occasion he stepped through the doorway expecting to be on the same level as the sidewalk and lost his balance when his foot dropped beyond the level of the entrance. There was no sign inside the store calling attention to the drop-off, but the lighting conditions were adequate to reveal it clearly to a person approaching it.

The injured man was 75 years old and wore tri-focal glasses, but there is no evidence that his vision while wearing the glasses was deficient or that he suffered any other personal impairment by reason of his age.

An experienced architect, Stratton O. Hammon, testified that the doorway did not conform to accepted architectural standards because the door swung inward and because it is difficult to observe a single step: "You can't see one step down very well, so we like to put two steps down, so you can spot those better with your eyes and avoid falling. One step down is always considered bad practice." He testified also that the provisions of the city building code in force at the time the building was remodeled in 1956 were violated in that they prohibited the location of a riser within one foot of an exit door and required that such doors be hung to swing open in the direction of exit travel. There was an argument as to whether the 1950 edition of the building code used by the witness was applicable, since the code had been revised in 1959, but the trial court did not resolve the question, nor were any of the code requirements recited in the instructions as included within the defendant company's duties.

■ We held in Severance v. Sohan, Ky., 347 S.W.2d 498, 502 (1961), that after the authenticity and applicability of an ordinance have been established it is within the discretion of the trial court to determine whether it shall be read to the jury. Generally speaking, however, it seems to us that an ordinance or regulation creating rights and duties is no different from a statute and should be treated in the same way. For example, statutes regulating traffic on the highways are not read to the jury in accident cases. To the extent that they are applicable their substance is incorporated in the instructions covering the law of the case. So it should have been here. The building code or codes from which portions were read to the jury either did or did not place certain duties on the defendant company which were applicable at the time of the accident. If they did impose such duties, they either called for a directed verdict against the company on the issue of its negligence (as requested by Bill) or they should have been submitted to the jury under an appropriate instruction on proximate cause. If they did not impose such duties, or if as a matter of law the company's failure to comply was not a proximate causal factor in the accident, then they were not relevant to the case and should not have been brought to the jury's attention at all. As it is, the jury received the information and was left to decide for itself what, if any, was its relevance and legal effect.

■ Whatever else might be said on this subject, it seems clear that legal duties imposed by law do not constitute "evidence" in the accepted sense of the word. Therefore, the building code provisions read to the jury in this case cannot be considered as a part of the factual testimony brought to measure by the defendant company's motion for a directed verdict.

■ Neither can Hammon's testimony that the condition of the doorway was unsafe under accepted architectural standards and requirements be considered as lending weight to the plaintiff's case. The criterion of negligence is what an ordinarily prudent person would have done under the circumstances at hand. What architects would have done is something

else, and is irrelevant to the issue of the defendant company's negligence. There was no objection to this particular phase of the testimony when it was elicited, but that omission did not furnish it any probative weight.

■ Even if Hammon's opinion had not been expressed in terms of accepted standards among professional architects, it would still have been incompetent. Such opinions are admissible only when the factual situation is so far out of the practical experience of jurors that they are likely to be incapable of forming a correct judgment without expert assistance. 31 Am.Jur.2d 709, 710 (Expert and Opinion Evidence, § 149); Annotation, "Safety of condition, place or appliance as proper subject of expert or opinion evidence in tort actions," 62 A.L.R.2d 1426, 1432.

■ In Kentucky Public Service Co. v. Topmiller, 204 Ky. 196, 263 S.W. 706, 708 (1924), and Kentucky Power Company v. Kilbourn, Ky., 307 S.W.2d 9, 12 (1957), electricity was the technical subject on which expert testimony was received, and in each case the question before this court was not whether opinion evidence was admissible but whether the witnesses were qualified as experts. In this case the converse is true. Regardless of Hammon's professional qualifications, the subject under consideration is not within the scope of admissible opinion evidence.

"We think it clear * * * that the opinions of experts as to the ultimate fact of whether an open, visible situation is dangerous is not competent. That would be to allow the witness to take the place of the jury." Morton's Adm'r v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S.W.2d 345, 347 (1940). See also Hargadon v. Louisville & N. R. Co., Ky., 375 S.W.2d 834, 839 (1964), and Downing v. Drybrough, Ky., 249 S.W.2d 711, 712 (1952). We are not unmindful of the fact that expert testimony in fall-down cases is becoming increasingly prevalent. See, for example, Weathers v. Morris' Estate, Ky.,

397 S.W.2d 770 (1965), and Jones v. Winn-Dixie of Louisville, Inc., Ky., 458 S.W.2d 767 (1970). But an expert may be of great assistance to the jury in providing information without expressing an opinion on the ultimate factual issue involved in the litigation. In neither of the cited cases was the question raised.

With the evidence thus reduced to that which has substantive value, the case is rather closely analogous to Barber v. Cunningham, Ky., 335 S.W.2d 882 (1960), in which the defendant was held as a matter of law not negligent in maintaining a small platform with a step and two risers descending to the sidewalk from the entrance to his store building, and in which this court remarked "that in view of the fact *that the nature of the step and platform was plainly visible to the appellant when he entered the store, and the fact that he had visited the store on two or three previous occasions*, it would be difficult to avoid the conclusion that he was contributorily negligent as a matter of law." (Emphasis added.)

And in the earlier case of J. C. Penney Co. v. Mayes, Ky., 255 S.W.2d 639, 641 (1953), the prevailing viewpoint in cases of this kind was said to be as follows:

"It has been uniformly held that merely because a step-up or a step-down, or a flight of steps up and down, is maintained at the entrance to a store building, this in itself is no evidence of negligence, if the step or steps are in good condition and in plain view. We have found no Kentucky decision wherein this rule of law has been applied, but other jurisdictions have followed it unswervingly. * * * It is a matter of common observation that the entrance to or exit from buildings employed for every conceivable purpose often adjoin surfaces that are frequently at different levels as compared with these buildings, so that this variance has to be overcome by one or more steps of greater or less height, and property owners have a right to

construct their buildings in this manner in reliance on this common observation and assume that those who may frequent their buildings will exercise ordinary circumspection as to their footing."

When there is no statute or ordinance imposing upon the occupier of premises a higher obligation than the common law duty of ordinary care, negligence on his part and contributory negligence on the part of the pedestrian in this type of situation usually are measured by the same test and will be mutually exclusive. Jones v. Winn-Dixie of Louisville, Inc., Ky., 458 S.W.2d 767, 770 (1970). That is, unless there are circumstances which hold the pedestrian to a lesser standard of care than that of the keeper of the premises, holding that one of the two was not negligent is tantamount to holding that the other one was. That would be the case in this instance but for the possible applicability of the building code provisions mentioned by Hammon. If they do apply, and if they mean what Bill says they mean, then the defendant company was negligent as a matter of law and the only question is whether Bill also was negligent. The jury evidently found that he was not, but we think that as a matter of law he was. Except for the building code the defendant company as a matter of law was not negligent. Barber v. Cunningham, Ky., 335 S.W.2d 882 (1960). That being so, we think it follows as a mattter of law that Bill *was* negligent, and if Bill was negligent it makes no difference whether the defendant company was made negligent by the building code. In other words, although an ordinance may raise the standard of care required of the occupier of building premises, it does not lower the degree of care required of the invitee for his own safety, which still is measured by the standard of the ordinarily prudent person under similar circumstances. We so hold.

The point is made that Bill was an elderly man and that the infirmities of age are a part of the "circumstances" under which the conduct of an "ordinarily prudent person" is to be judged. See Prosser on Torts, § 33, pp. 151, 152 (4th ed., 1971); Note, Negligence: Physical Defects as Affecting the Standard of Care in Civil and Criminal Cases, 42 Ky.L.J. 220 (1942). Without undertaking to express an opinion on that particular question, we think the point is inapplicable because there was no evidence that his age had affected the plaintiff's capacity to observe and appreciate the condition of the doorway and to exercise the same circumspection that would be expected of a younger person. Judicial notice is not unlimited, and a recognition that advancing age brings on various ailments in general would not, we believe, justify an assumption that any particular individual 75 years of age has less than average capacity to observe and appreciate the physical facts and conditions surrounding him.

The judgment is reversed and the cause remanded with directions that a judgment n. o. v. be entered in favor of the appellant.

All concur.