WAL–MART STORES, INC., Appellant,

v.

Bobby LAWSON, Appellee.

No. 1997–CA–001769–MR.

Court of Appeals of Kentucky.

Dec. 30, 1998.

Jason E. Williams, London, for Appellant.

Will T. Scott, Pikeville, for Appellee.

Before GUDGEL, Chief Judge,
GARDNER and MILLER, Judges.

## OPINION

GUDGEL, Chief Judge.

This is an appeal from a judgment entered by the Pike Circuit Court in a slip and fall case. Appellant Wal–Mart Stores, Inc. contends that the trial court erred (1) by failing to grant it a directed verdict, (2) by failing to submit a certain tendered instruction to the jury, (3) by failing to grant its motion for a new trial or judgement n.o.v., and (4) by failing to set aside the jury's verdict as excessive. We disagree with all of appellant's contentions. Hence, we affirm.

This matter arises out of an injury which appellee allegedly suffered in February 1993 when he slipped and fell in the garden center located at appellant's store. The evidence showed that at the time of appellee's fall the garden center was fenced, it had a concrete floor, and it was located adjacent to the main store's rear entrance. The garden center aisle closest to the store ("first aisle") was covered by roofing, while the adjacent aisle ("second aisle") was uncovered and exposed to the elements.

It is undisputed that the weather on the date of the accident was cold, rainy and snowy. Appellant's employees therefore moved flowering plants from the store's outside display area to the enclosed garden center area, where the plants were stacked in the second aisle. According to appellee,

some of the plants were positioned in areas where rain drained off the garden roof into the second aisle, and a black substance covered a ten-foot by twenty-to-thirty-inch strip next to the plants. No warning signs were posted in the area.

Appellee indicated that he attempted to enter the store through the garden center, as he had done on many previous occasions. He initially used the first aisle, but he retreated and used the second aisle after finding that the first aisle was blocked by an employee on a ladder. Appellee testified that as he walked down the second aisle past the plants, he stepped on something which was as "slick as greased lightening" and fell, injuring himself. When appellee attempted to get up from the floor, he noticed that his clothes were covered with the black substance, which he described as "potting soil or whatever." Appellee also found a "wet and nasty" piece of cardboard on his knee after the fall, and he stated that he did not know whether he slipped on the black substance or on the wet cardboard. Finally, appellee indicated that he did not see the black substance on the floor until after his fall, as he probably was looking at the plants as he walked.

Appellee filed this action alleging that he was injured as a result of appellant's negligence. After a trial, the jury found for appellee and awarded him $2,516 in damages for past medical expenses, and $56,573 in damages for past and future pain and suffering. The jury found that appellee was 25% at fault, and his award was reduced accordingly. This appeal followed.

█ Appellant first contends that the trial court erred by failing to grant it a directed verdict. We disagree.

█ It is well established in Kentucky slip and fall cases that:

Where the floor condition is one which is traceable to the possessor's own act—that is, a condition created by him or under his authority—or is a condition in connection with which the possessor is shown to have taken action, no proof of notice of the condition is necessary. However, where it is not shown that the condition was created by the possessor or under his authority, or is one about which he has taken action, then it is necessary to introduce sufficient proof by either direct evidence or circumstantial evidence that the condition existed a sufficient length of time prior to injury so that in the exercise of ordinary care, the possessor could have discovered it and either remedied it or given fair adequate warning of its existence to those who might be endangered by it.

*Cumberland College v. Gaines,* Ky., 432 S.W.2d 650, 652 (1968).

Moreover, this court's role in reviewing the trial court's denial of appellant's motion for a directed verdict is limited to reviewing the evidence adduced, and

determining whether the trial court erred in failing to grant the motion. . . . All evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact. . . . The prevailing party is entitled to all reasonable inferences which may be drawn from the evidence. Upon completion of such an evidentiary review, the appellate court must determine whether the verdict rendered is " 'palpably or flagrantly' against the evidence so as 'to indicate that it was reached as a result of passion or prejudice.' " *NCAA v. Hornung,* Ky., 754 S.W.2d 855, 860 (1988). If the reviewing court concludes that such is the case, it is at liberty to reverse the judgment on the grounds that the trial court erred in failing to sustain the motion for directed verdict. Otherwise, the judgment must be affirmed.

*Lewis v. Bledsoe Surface Mining Co.,* Ky., 798 S.W.2d 459, 461–2 (1990).

Here, drawing all reasonable inferences in favor of appellee, and unlike situations in which plaintiffs have no idea what caused them to slip and fall, *see Tharp v. Tharp,* Ky., 346 S.W.2d 44 (1961), the evidence showed that appellee slipped and fell on a black substance and/or "wet and nasty" cardboard located on a wet concrete floor. Direct and circumstantial evidence was adduced to trace the presence of the black substance

to the actions of appellant and/or its employees, either in allowing water to drain from the garden center roof into the second aisle, and/or in regard to the placement of plants in the second aisle. Such evidence was sufficient to eliminate any need to prove that appellant had advance notice of the black substance's presence on the floor. *See Cumberland College, supra.* Additionally, as evidence was adduced to show that the cardboard was "wet and nasty," that the weather was bad and few customers were in the garden center, and that two employees were nearby when appellee fell, we cannot say that appellant was entitled to a directed verdict on the ground that the direct or circumstantial evidence was insufficient to show that the wet cardboard was on the floor long enough for appellant, in the exercise of ordinary care, to discover and remove it from the floor.

Further, we are not persuaded that appellant was entitled to a directed verdict on the ground that appellee simply encountered "natural outdoor hazards" which were as obvious to him as to appellant, and which did not "constitute an unreasonable risk" to appellee which appellant had "a duty to remove or warn against." *Corbin Motor Lodge v. Combs*, Ky., 740 S.W.2d 944, 945 (1987). *See Standard Oil Co. v. Manis*, Ky., 433 S.W.2d 856 (1968). Unlike the situation in *Corbin*, where a restaurant patron slipped and fell on an icy sidewalk while leaving the restaurant during extremely adverse weather, here appellee adduced evidence to support his contention that he slipped and fell as a result of hazards created by the negligence of appellant or its employees, rather than simply as a result of adverse weather conditions which were equally obvious to both parties. Hence, *Corbin* does not support appellant's position herein. The trial court therefore did not err by refusing to grant appellant's motion for a directed verdict. *See Lewis, supra.*

■ Next, appellant contends that the trial court erred by failing to submit a certain tendered instruction to the jury. The tendered instruction would have permitted the jury to find for appellee

only if you believe from the evidence that upon the occasion herein questioned:

(a) That his injuries were caused by slipping on a piece of paper or substance on the concrete floor in the garden center area;

(b) That by reason of the presence of the piece of paper or substance on the concrete floor in the garden center area, Wal–Mart Store premises were not in a reasonably safe condition for the use of its business invitees, including the Plaintiff; and

(c) That said piece of paper or substance had been on the floor a sufficient length of time before the Plaintiff fell. That in the exercise of ordinary care Wal–Mart's employees should have discovered and removed the piece of paper or substance.

The problem with this instruction lies in the fact that it failed to fairly and adequately present the theories of the case supported by the evidence. Instead, contrary to *Cumberland College, supra,* the instruction incorrectly eliminated any opportunity for the jury to find that proof of notice was unnecessary because the floor condition was traceable to appellant's actions. Thus, we conclude that the court did not err by failing to give appellant's tendered instruction.

■ Next, appellant contends that the trial court erred by failing to grant its motion requesting a new trial or judgment n.o.v. on the ground that the hazard described by appellee was so open and obvious as to compel· a judgment in appellant's favor. We disagree.

Appellant asserts that the hazard described by appellee was comparable to that described in *Bonn v. Sears, Roebuck & Co.,* Ky., 440 S.W.2d 526 (1969). In *Bonn,* the plaintiff was injured when he fell into one of the three grease pits located in a Sears automobile service station. Each pit was the length of two cars, was intersected by a walkway, and had a three-inch-high raised rim. The plaintiff admitted that he "just wasn't looking where I was going" when he rounded a car and fell into the pit while searching for a Sears employee. Kentucky's highest court affirmed the summary judgment for Sears, noting:

In the instant case, Sears' activities involved a risk that was known or obvious to those who entered the premises, because the risk was inherent in the nature of the activity itself. In determining the extent of preparation that a business visitor is entitled to expect to be made for his protection, the nature of the premises and the purposes for which it is used are of great importance. It has been pointed out that one who goes on business to the executive offices in a factory is entitled to expect that the possessor will exercise reasonable care to secure his visitor's safety. If, however, on some particular occasion he is invited to go on business into the factory itself, he is not entitled to expect that special preparation will be made for his safety, but is entitled to expect only such safety as he would find in a properly conducted factory.

In the rule stated above, the term "obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man in the position of the visitor exercising ordinary perception, intelligence and judgment. . . .

In the instant case, Sears could not be considered negligent in merely having grease pits in its service station, because such pits are perfectly legitimate and normal facilities of service station operations; nor could it be reasonably considered that Sears was negligent in not having guardrails around the pits (when occupied by the cars), because it is a matter of common knowledge that service operations on an automobile could not conveniently be carried on with a guardrail surrounding the automobile. The plaintiff admitted knowledge of both the activity (an automobile service station) and the condition (grease pits). The grease pit was a ususal and necessary condition to the carrying on of the business. It was neither unusual nor hidden. It was well lighted. It was open and obvious. Therefore, it is our conclusion that so far as this plaintiff is concerned, Sears breached no duty owed to him which was causative of the harm he suffered.

*Id.* at 529.

We are not persuaded that *Bonn* requires us to conclude that a ten-foot by twenty-to-thirty-inch strip of black substance, located adjacent to plants in an aisle intended for use by customers, constituted such an open and obvious danger as to compel the granting of a directed verdict. Instead, there was merely a question of whether appellee negligently failed to exercise ordinary care to perceive the danger. This issue was properly presented to the jury by the court's instructions, and in fact the jury found that appellee was 25% at fault. *See Jones v. Winn–Dixie of Louisville, Inc.,* Ky., 458 S.W.2d 767 (1970). Moreover, as noted above, appellant was not entitled to a judgment on the ground that appellee's injury resulted from natural outdoor hazards which were as obvious to appellee as to appellant. *See Corbin, supra.* It follows, therefore, that the trial court did not err by failing to grant appellant a new trial or a judgment n.o.v.

■ Finally, appellant contends that the trial court erred by failing to set aside the jury's verdict on the ground that the jury awarded excessive damages for pain and suffering. We disagree.

Appellee adduced evidence to show that he has suffered ongoing pain, swelling, weakness in his knee, and other symptoms, all of which either started or worsened after the fall at appellant's store. Moreover, the evidence showed that at the time of the accident, appellee had a remaining life expectancy of some 34.8 years. After reviewing the record and regardless of what decision we might have reached if sitting as the triers of fact, we simply cannot say that the trial court clearly erred by failing to set aside the jury's award of damages, for past and future pain and suffering, as excessive. *See Shortridge v. Rice,* Ky.App., 929 S.W.2d 194 (1996).

The court's judgment is affirmed.

ALL CONCUR.